SANDRA CABRINA JENKINS, Judge.
^Defendant, Preston Porter, was charged by grand jury indictment with three counts of aggravated rape of a victim under the age of thirteen, violations of La. R.S. 14:42(A)(4), and one count of second degree kidnapping, a violation of La. R.S. 14:44.1. Defendant pled not guilty to all charges. Following a two-day trial, the jury returned the following verdicts: (count one) guilty of sexual battery;[1] (counts two and three) guilty of aggravated rape; (count four) guilty of second degree kidnapping. Defendant filed motions for new trial and post-verdict judgment of acquittal. On the day of sentencing, the trial court denied defendant’s motions and sentenced defendant to fifty years for sexual battery, a life sentence on each count of aggravated rape, and twenty years for second degree kidnapping. The trial court imposed all sentences without benefit of parole, probation or suspension of sentence and ordered the sentences run concurrently-
Defendant timely appeals all four of his convictions and raises six assignments of error in this appeal. Upon our review of the record, we find no errors patent and, for the reasons that follow, we find no merit to any of ^defendant’s assignments of error. Accordingly, we affirm defendant’s convictions and sentences.
FACTUAL BACKGROUND
Defendant was charged by grand jury indictment with second degree kidnapping and three counts of aggravated rape of C.C., a victim under the age of thirteen, on January 3, 2012. The following witnesses testified at trial regarding the events of that date.
C.C.’s Testimony
The victim, C.C., testified that in 2011 she was living in Texas with her mother, N.M., her brother, P.P., and defendant.[2] For the Christmas holidays, they drove to New Orleans to stay at her grandmother’s house. On the morning of January 3, 2012, she was sleeping on her grandmother’s couch when defendant woke her and told her to put on her shoes and jacket. Defendant then instructed her to come with him outside and get in the front seat of his car. Once in the car, defendant drove to the club that he owned in New Orleans East, he parked the car in the parking lot outside the club. She stated that he went into the club but soon came back to the car. At this point, C.C. had gotten into the back seat but defendant told her to come to the front seat. When C.C. got in the front seat, defendant pulled her pants and underwear down. She stated that defendant’s pants were unbuttoned and his penis was out of his pants. C.C. testified that defendant put his mouth on her chest and breasts, he told her to put *877 her mouth on his penis, |4and then he grabbed her and pulled her on top of him as he sat in the driver’s seat. C.C. stated that defendant’s penis touched her privates — her genital area — but he did not penetrate her. Then, C.C. stated, her mother was standing outside the window of the car, beating on the car door and telling the defendant to let C.C. out of the car. The defendant pushed her off of him, told her to put her clothes on, and he drove away with her in the car. C.C.’s mother followed them in another car. Eventually defendant pulled over, let C.C. out of the car, and she got into the car with her mother. Before she got out of defendant’s car, however, he told C.C. to tell her mother “this only happened one time.” When asked at trial whether that was the truth, C.C. testified that “it” happened several times before in Texas — “it started at the age of nine and didn’t end until this Christmas.”[3]
N.M.’s Testimony
N.M., C.C.’s mother, testified that she and defendant had a ten year relationship; and defendant is the father of her son, P.P., and stepfather to her daughter, C.C. N.M. and defendant started their relationship while living in New Orleans and they moved to Texas following Hurricane Katrina. In December 20H, defendant drove her, C.C., and P.P. to New Orleans to stay at her mother’s house. They stayed there for at least two weeks. On the morning of January 3, 2012, she was asleep when her mother woke her and told her that Preston was not in the house and she could not find C.C. in the house either. Because they had to 15drive back to Texas to get the kids back in school, N.M. got up and called defendant’s cell phone to find out where he had gone. When defendant did not answer his cell phone, N.M. decided to borrow her mother’s car and drive to the club to see if she could find defendant. Defendant had been doing work at the club while they were in New Orleans.
When she arrived at the club, N.M. saw defendant’s car and noticed it was running. As she walked up to defendant’s car, N.M. saw her daughter, C.C., on top of the defendant in the front seat of the car. She could see that C.C. did not have pants on because she saw her bare behind through the window. N.M. started to hit the glass and yell at defendant to give her her child. She said that defendant “looked like he saw a ghost,” pushed C.C. to the side and drove off in his car. N.M. immediately got into her mother’s car and followed defendant. At a red light, defendant pulled over and let C.C. out of the car.
N.M. testified that C.C. got into her car and started crying. N.M. started driving back to her mother’s house, but defendant was following her. She pulled over the car and she got out to talk to defendant, who had also pulled over. N.M. stated that she asked the defendant “why” and he stated “I’m sick.” N.M. got back into the car and asked C.C. what happened. N.M. recalled C.C. said it happened once.
N.M. called her mother and told her that she wanted her mother to bring C.C. to the hospital to be examined. N.M. did not explain to her mother what had happened, told her mother not to ask her any questions and just bring C.C. to the 1 fihospital for an exam. N.M. testified that she was not in the right frame of mind and thought her mother would be better to bring C.C. to the hospital.
*878 Dr. Jamie Jackson’s Testimony
Dr. Jamie Jackson testified that she works as a child abuse pediatrician at the Audrey Hepburn Care Center at Children’s Hospital where she evaluates and treats children involved in suspected cases of physical or sexual abuse or neglect.[4] On January 3, 2012, Dr. Jackson was notified by the Emergency Room at Children’s Hospital that C.C. had been brought into the ER and presented as having experienced sexual abuse within the previous 24 hours. Dr. Jackson conducted a recorded forensic interview with C.C. in a monitoring room where the interview was viewed and heard by Detective Journay Ross of the New Orleans Police Department and a representative from the Child Advocacy Center. Dr. Jackson stated that C.C. gave a clear and detailed history of what had happened to her that day and on past occasions.
After the interview, Dr. Jackson performed a physical examination of C.C. and collected all of C.C.’s clothing for trace evidence. She also collected sterile swabs from C.C.’s breasts, mouth, fingernails, vagina, anus, and perianal area. In her medical exam report, Dr. Jackson wrote that there were no inconsistencies noted, meaning that the physical exam was not inconsistent with the history that |7C.C. had provided in the interview. Dr. Jackson collected the swabs for the sexual abuse kit and sent them to the Louisiana State Police Crime Lab for testing.
Detective Ross’s Testimony
Detective Journay Ross testified that she is a child abuse detective with the New Orleans Police Department and, on January 3, 2012, she was assigned to investigate the possible aggravated rape of C.C., reported by Children’s Hospital. Det. Ross went to the Care Center at Children’s Hospital where she met C.C. and her grandmother. She monitored the interview conducted by Dr. Jamie Jackson with C.C. After observing the interview, Det. Ross relocated C.C. to the child abuse office on Broad Street and contacted C.C.’s mother, N.M., to meet them there. Det. Ross also interviewed N.M. Based on the information gathered in the interviews, Det. Ross obtained an arrest warrant for the defendant, Preston Porter, on the charge of aggravated rape and secured a search warrant to obtain defendant’s DNA by buccal swab.
Marcie Herndon
The trial court qualified Marcie Hern-don as an expert in forensic DNA. Ms. Herndon testified that she is a forensic data analyst for the State Police Crime Lab, and she prepared the crime lab report in this case. She stated that the lab received a sexual assault kit containing several swabs from C.C. The lab also received a buccal swab from defendant to compare to the swabs collected from C.C. Ms. Herndon explained the process of collecting DNA from the swabs and comparing the evidence. She stated that the results revealed no presence of seminal fluid in |Rany of the swabs taken from C.C. However, the swabs from C.C.’s right and left breasts revealed a mixture of DNA from two people — C.C. as the minor contributor and the defendant as the major contributor.
Preston Porter’s Testimony
The defendant testified that on the morning of January 3, 2012 he woke up and decided to go to his club to finish a *879 construction project before driving back to Texas with the family. On his way out of the house, he passed C.C. who was watching T.V. on the couch. Defendant testified that C.C. asked to go to the club with him, to help him there and make a little money like her brother. He said she knew that defendant would pay her brother and others to help him clean or do other work at the club. Defendant let her come along. When they got to the club, C.C. went inside with him and he gave her some tasks to do. Defendant said that he showed C.C. how to use the nail gun. While they were working, they were both sweating. He wiped his sweat with a rag and C.C. may have used that rag too. After thirty minutes or an hour, defendant decided they should leave. He gave C.C. a twenty dollar bill for helping him and she put the money in her bra. When they left the club and got in the car, N.M. came up and started banging on his window. Defendant said that N.M. was upset that they had left the house and that she had errands to do before they left for Houston. Defendant stated that he let C.C. out of the car to go with N.M., but N.M. never accused him of abusing C.C.
Defendant testified that N.M. did not tell him that "C.C. had gone to the hospital, and N.M. did not explain to him why she left C.C. at her mother’s when 1flthey drove back to Houston that night.[5] Defendant denied touching or abusing C.C. on January 3, 2012.
ERRORS PATENT
A review of the record for errors patent reveals none.
ASSIGNMENTS OF ERROR
Defendant raises six assignments of error on appeal. For the reasons that follow, we find no merit to any of defendant’s assignments of error.
Sufficiency of Evidence
When a defendant raises issues relating to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence in accordance with the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Hearold, 603 So.2d 731, 734 (La.1992). Under the Jackson v. Virginia standard of review, “an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.” State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28. The reviewing court must consider all of the record evidence as a whole, not just the evidence most favorable to the prosecution, in determining whether rational triers of fact could find that the State proved every essential element of the crime beyond a reasonable doubt. Id. If rational triers of fact could disagree as to the interpretation of the evidence, then the trier’s view of the evidence most | infavorable to the prosecution must be adopted. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
“In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion.” *880 State v. Higgins, 03-1980, p. 6 (La.4/1/05), 898 So.2d 1219, 1226. Conflicting statements as to factual matters relate to the weight of the evidence, not its sufficiency, and the determination of whether the testimony of one witness is to be believed over that of another rests with the trier of fact. State v. James, 09-1188, 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996 (citing State v. Jones, 537 So.2d 1244, 1249 (La.App. 4 Cir.1989)). It is not the function of the appellate court to reweigh the evidence or reassess the credibility of witnesses. State v. Helou, 02-2302, p. 5 (La.10/23/03), 857 So.2d 1024, 1027.
In this case, defendant argues that the evidence is insufficient to sustain his convictions because no rational juror could have found that the State proved the elements of the crimes of sexual battery, aggravated rape and second degree kidnapping beyond a reasonable doubt.
The State charged defendant with three counts of aggravated rape. La. R.S. 14:42, in pertinent part, defines aggravated rape as:
... a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
In Under this provision of the statute, the State had to prove beyond a reasonable doubt, for each count of aggravated rape, that defendant committed the act of rape against C.C., a victim under the age of thirteen years.
La. R.S. 14:41 defines rape as “anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.” Oral intercourse is further defined as “the touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender” or such touching of the offender by the victim. La. R.S. 14:41(C).
At trial, C.C. testified that she was twelve years old on January 3, 2012 when defendant took her in his car and parked outside his club. She stated that defendant “made me put it in my mouth” and indicated on a picture that she was referring to defendant’s penis. She also stated that defendant put his mouth on her and indicated that his mouth was on her chest and breasts and then on her vagina. When asked if his mouth touched her skin when defendant put his mouth on her in those places, she answered yes. C.C. also testified that defendant pulled her pants down, grabbed her and pulled her on top of him. She described that he was sitting in the front seat of the car with the seat leaned back and his pants were unbuttoned and his penis was out of his pants. When asked if his penis touched her private, she answered yes, but, when asked, “Did it go in?” and “Did it touch your butt?” she answered no.
The State also presented Dr. Jackson’s testimony and her report on C.C.’s medical history and medical exam conducted on January 3, 2012. The State then | ^introduced and played the videotape of C.C.’s forensic interview with Dr. Jackson. During the interview, C.C. recounted what occurred with defendant on that day and on past occasions in Texas. Later, the State introduced the lab report of the DNA samples collected from C.C. and defendant and the results indicating that de *881 fendant’s DNA was present on C.C.’s breasts.
Although the medical exam and DNA results did not reveal definitive evidence that defendant engaged in intercourse with C.C., Dr. Jackson stated that in most cases of child sexual abuse there is not any abnormal or definitive findings from the physical examination. See State ex rel. M.Q., 98-1017, p. 3 (La.1/29/99), 728 So.2d 849, 850 (“The absence of objective medical findings of trauma therefore did not preclude the possibility of sexual penetration in this case.”) The DNA hits from C.C.’s breasts, however, were consistent with her statements to Dr. Jackson and her testimony at trial that defendant put his mouth on her breasts. Dr. Jackson further testified that, in the hundreds of cases of suspected abuse for which she had examined children and collected swabs, she recalled only one other case in which there was any positive DNA hit.
Based on all of the testimony and evidence presented, viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could find beyond a reasonable doubt that defendant committed two acts of aggravated rape: oral intercourse, with a victim under the age of thirteen, by the touching of defendant’s genitals by the mouth or tongue of the victim; and oral intercourse, with a victim under the age of thirteen, by the touching of the victim’s genitals by the mouth or tongue of the defendant.[6]
11sOn the count of aggravated rape by vaginal intercourse with the victim, the jury returned a responsive verdict of guilty of sexual battery.[7] The crime of sexual battery is defined in La. R.S. 14:43.1 as,
A. ... [T]he intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the -touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:
(1) The offender acts without the consent of the victim.
(2) The act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender.
As stated previously, C.C. testified that defendant pulled her pants down, pulled her on top of him and his penis touched her but did not penetrate her. N.M., C.C.’s mother, also testified she saw C.C., without her pants on, on top of the defendant in the front seat of his car. Based on all the testimony and evidence presented, we find that any rational trier of fact could find defendant guilty of sexual battery beyond a reasonable doubt.
Finally, we consider the sufficiency of evidence for defendant’s second degree kidnapping conviction. “[Kjidnapping is: (1) The forcible seizing and carrying of any person from one place to another; or (2) *882 The enticing or persuading of any person to go from one place to another; or (3) The imprisoning or forcible secreting of any person.” La. R.S. 14:44.1(B). When the kidnapping involves the physical injury or sexual abuse of the victim, the crime becomes a second degree offense, pursuant to La. R.S. 14:44.1(A)(3).
114Here again, C.C.’s testimony is sufficient to establish the elements of the offense. See State v. Webb, 13-0146, p. 17 (La.App. 4 Cir. 1/30/14), 133 So.3d 258, 270. C.C. testified that defendant woke her up, told her to put on her jacket and shoes and to get into his car. C.C. stated in her testimony that she did not want to do any of that. As previously discussed, C.C. also testified that defendant raped her after taking her from home. Despite defendant’s testimony that C.C. asked to go with him to help him at the club that morning and his denial of any sexual contact with C.C., C.C.’s testimony establishes the elements of second degree kidnapping. The jury’s credibility determination of witness testimony will not be disturbed absent an irreconcilable conflict with the physical evidence or any internal contradiction of testimony. See Jones, 537 So.2d at 1249. We find that any rational juror could have found beyond a reasonable doubt that the State proved the elements of second degree kidnapping.
In this case, the testimony of the victim established the essential elements of each crime for which defendant was convicted. The testimony of her mother, N.M., and Dr. Jackson were consistent with C.C.’s testimony, and the DNA results reveal corroborating physical evidence of her testimony. The jury considered this testimony along with the testimony of defendant and several other witnesses. Considering all of the evidence and testimony presented at trial and viewing that evidence in the light most favorable to the prosecution, we find any rational juror could find beyond a reasonable doubt that the State proved every essential element of each crime. Thus, the evidence is sufficient to support defendant’s convictions and this assignment of error is without merit.
| ^Appellate Review of Voir Dire
In his first assignment of error, defendant asserts that he has been denied appellate review of the jury selection process because the voir dire transcript does not include adequate information about juror challenges and objections made by the defense.
Initially, the record lodged with this Court did not include the voir dire transcript. Defendant then requested supplementation of the record to include “a certification that no defense cause challenges were denied, or if defense cause challenges were denied, the transcript of the voir dire of October 29, 2012 ...” Subsequently, the record was supplemented with the voir dire transcript, a certification from the court reporter that there were no defense challenges for cause in the first round of jury selection, and a transcription of the one defense challenge for cause that was denied in the second and final round of jury selection. The supplement did not include a transcript of all jury selection discussions in chambers. Based on the lack of a full transcript of the in-chambers jury selection process, defendant contends he cannot adequately review the jury selection, denying him of his right to appeal.
Every criminal defendant has a right to a complete transcript of his trial proceedings. State v. Plaisance, 00-1858, p. 17 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, 1186. “No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” La. Const, art. 1, § 19. Accord *883 ingly, La.C.Cr.P. art. 843 requires, in all felony cases, the trial court to record “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections.” See also La. R.S. 13:961(C). The lack or omission of material portions of the transcript may require reversal where the appellate court finds that the defendant is denied full review of “a substantial portion of the trial record for errors.” State v. Landry, 97-0499, p. 2 (La.6/29/99), 751 So.2d 214, 215. However, this court has held that “an incomplete record may nonetheless be adequate for appellate review” and “a defendant is not entitled to relief absent a showing of prejudice based on the missing portions of the transcripts.” Plaisance, 00-1858, pp. 17-18, 811 So.2d at 1187 (citing State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 480).
Furthermore, the party making the motion for appeal bears the burden of furnishing the appellate court with a record of the trial proceedings necessary for review “in light of the assignment of errors to be urged.” La.C.Cr.P. art. 914.1(A). Portions of the proceedings that do not relate to anticipated assignment of errors shall not be furnished to a party for purposes of appeal. La.C.Cr.P. art. 914.1(B). Defendant specifically requested either the voir dire transcript or a certification from the court reporter regarding defense challenges for cause. The record was supplemented with the transcript, the court reporter certification, and a transcription of the one defense challenge for cause during jury selection. Defendant also acknowledges that the record includes the jury panel form indicating which jurors were excused for cause and which jurors were peremptorily struck by the defense and the State. But, defendant points out, the jury panel form does not indicate who requested each peremptory strike and all objections made during the jury selection process. Defendant, however, did not request all jury selection discussions, all chamber proceedings, or all bench conferences.
In State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, the Louisiana Supreme Court rejected the defendant’s claim that the record was incomplete |17where the court reporter did not record bench conferences during jury selection, finding, “the defendant has not demonstrated any specific prejudice which he suffered as a result of those conferences not being transcribed; nor does anything in the record suggest that the conferences had a discernible impact on the proceedings.” Id., 98-0541, p. 15, 802 So.2d at 1237; See Plaisance, supra; see also State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542 (finding the failure to record bench conferences did not constitute reversible error where defendant failed to point out any specific prejudice).
In this case, we find the defendant’s request for transcripts of trial proceedings was fulfilled in accordance with La.C.Cr.P. art. 914.1, and the transcripts provide an adequate record of this case to address defendant’s assignments of error. We also find that defendant has not demonstrated any specific prejudice suffered as a result of the chamber conferences not being transcribed. This assignment of error is without merit.
Challenge for Cause
Defendant also assigns error to the challenge for cause denied by the trial court as revealed by the supplemental transcript. As certified by the court reporter, the trial court denied only one defense challenge for cause during jury selection. Defendant claims that the trial court erred in denying his for-cause challenge of juror thirty-six, Ms. Hammond, *884 because she worked at the New Orleans Police Department Evidence room and she knew one of the investigating detectives in this case.
The State argues that this assignment of error has been waived because the defense failed to contemporaneously object to the trial court’s adverse ruling on the defense challenge for cause. See La.C.Cr. P. art. 841(A). The Louisiana |; ¡¡Supreme Court addressed this argument in State v. Pinion, 06-2346, p. 10 (La.10/26/07), 968 So.2d 131, 136, and held,
In jury selection, counsel satisfies the requirements of Louisiana’s contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause. La.C.Cr.P. art. 841 (“It is sufficient that a part, at the time of ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take ... and the grounds therefor.”).
See also, State v. Anderson, 09-105, pp. 12-13 (La.App. 5 Cir. 10/27/09), 28 So.3d 324, 332. In this case, defense counsel stated on the record the grounds for the challenge for cause; after the trial court denied the challenge, the defense exercised a remaining peremptory challenge on this juror. Thus, we address the merits of defendant’s assignment of error.
The trial court is vested with broad discretion when ruling on challenges for cause during jury selection, and the appellate court should only reverse a ruling where a review of the entire voir dire reveals that the trial court abused its discretion. State v. Odenbaugh, 10-0268, p. 24 (La.12/6/11), 82 So.3d 215, 237. “Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges.” Id. “Thus, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate ‘(1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges.’” Id. (quoting State v. Robertson, 92-2660, p. 4 (La.1/14/94), 630 So.2d 1278, 1281). Defendant in this case exhausted all of his peremptory challenges. Therefore, we must determine whether the trial court erred in denying the defendant’s challenge for cause.
| ^Defendant argues that the trial court erroneously denied the challenge for cause of juror thirty-six, Ms. Hammond. During the second round of jury selection, as reflected by the supplemental transcript, defense counsel challenged Ms. Hammond for cause arguing that because Ms. Hammond worked in the NOPD Evidence room she possibly could have handled evidence in this case and possibly could have spoken to Detective Ross about this case. The trial court noted that Ms. Hammond had no knowledge or memory of handling evidence in this case or of talking with Det. Ross about this case. Ms. Hammond also did not indicate that she knew any of the other witnesses, particularly the victim or defendant, or any counsel in this case. Ms. Hammond also specifically stated that she could be fair and impartial to both sides despite the fact that she knew Det. Ross.
The State or defense may challenge a juror for cause pursuant to La.C.Cr.P. art. 797, on certain grounds including,
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial *885 verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
In State v. Juniors, 03-2425 (La.6/29/05), 915 So.2d 291, the defendant argued that the trial court erroneously denied a challenge for cause where the juror revealed that one of the prosecuting attorneys in the case was his landlord and he had known him for a long while. The defense challenged this juror for cause based on his relationship with the assistant district attorney. See La.C.Cr.P. art. 797(3). The trial court denied the challenge, stating that the juror was questioned further Roand indicated that he would vote his conscience and not be influenced by the fact that the ADA was his landlord. Finding no trial error, the Louisiana Supreme Court stated, “[t]he law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the person injured by the offense, the district attorney, or defense counsel, it requires that jurors be fair and unbiased.” Juniors, 03-2425, p. 11, 915 So.2d at 306-07.
[T]he purpose of allowing challenges for cause is to secure a fair ánd impartial trial, (citation omitted) The key to securing this right is to ascertain whether there is anything in the disclosed relationship ... that would influence the juror’s judgment or that would persuade him or her to decide the ease on any basis other than fairness and the evidence presented in court.

Id.

Under La.C.Cr.P. art. 797(3), a juror’s relationship with a witness in the case who is not the defendant or the injured person, is not inherently suspect or grounds for cause. In State v. Allen, 95-1754, pp. 13-14 (La.9/5/96), 682 So.2d 713, 724, the Louisiana Supreme Court stated:
[E]ven where a prospective juror knows the victim, the defense must show the juror’s acquaintance with the victim is such that it is reasonable to conclude it would influence the juror in arriving at a verdict to be a sufficient ground for a challenge for cause. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied.
Therefore, we review the entirety of the voir dire to ascertain whether there is anything to indicate that this juror would be anything but fair and impartial. Upon our review of this record, given Ms. Hammond’s responses to the voir dire as a whole, we find nothing to suggest that this juror’s employment or knowing Det. Ross would affect her ability to be fair and impartial. Consequently, we find |2ino abuse of discretion in the trial court’s denial of the defense challenge for cause. This assignment of error is without merit.
Expert Testimony of Dr. Jamie Jackson
In his next assignment of error, defendant asserts the trial court erred in qualifying Dr. Jamie Jackson as an expert in child abuse pediatrics.
The determination of the credibility of any testifying witness is a question of fact, and the trial court’s ruling on a question of fact is vested with broad discretion. State v. Young, 09-1177, pp. 7-8 (La.4/5/10), 35 So.3d 1042, 1046. Accordingly, the trial court’s ruling on the qualifi *886 cations of an expert witness will not be set aside absent manifest error. Id.
In determining the admissibility of expert testimony, Louisiana courts follow the standard set forth in Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) that requires trial courts to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” State v. Foret, 628 So.2d 1116, 1122 (quoting Daubert, 509 U.S. at 589, 113 S.Ct. 2786). Under the Louisiana Code of Evidence, “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” La. C.E. art. 702.
Generally, the test of an expert’s competency evaluates knowledge, training, and experience with the subject about which he or she is called upon to testify. State v. Ferguson, 09-1422, p. 25 (La.App. 4 Cir. 12/15/10), 54 So.3d 152, 166. A combination of specialized training, work experience and practical application of the expert’s knowledge can combine to establish that person as an expert. Id. | ^Courts may also consider whether the witness has previously been qualified as an expert. State v. Marlowe, 10-1116, pp. 42-43 (La.App. 4 Cir. 12/22/11), 81 So.3d 944, 970 (citing State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865).
In this case, the trial court qualified Dr. Jamie Jackson as an expert in child abuse pediatrics. During the predicate examination, Dr. Jackson stated that she is a board certified pediatrician working at Children’s Hospital’s Audrey Hepburn Care Center as a child abuse pediatrician. She earned her undergraduate degree in psychology from the University of Florida and received her medical degree from the American University in the Caribbean. She completed a three year residency in pediatrics at LSU Medical School including a one year fellowship in forensic pediatric medicine, which is now referred to as child abuse pediatrics.
Dr. Jackson has practiced as a child abuse pediatrician at Children’s Hospital since 2010, has received training in forensic interviewing, currently conducts research on children’s reactions to forensic interviewing disclosures, and has made several presentations at professional conferences on topics related to child sexual abuse. At the time of her testimony, Dr. Jackson was not yet certified in child abuse pediatrics, but she would be eligible to take the board tests within the next year. Dr. Jackson testified, however, that she had conducted over one thousand child sex abuse examinations in her experience. Furthermore, she has previously qualified as an expert witness in the field of child abuse pediatrics in several Louisiana parishes, including Orleans, and in the State of Texas.
Considering Dr. Jackson’s education, training, professional development, work experience of interviewing and examining suspected victims of child abuse, and her previous acceptance by Louisiana courts as an expert witness, we find no l^abuse of discretion in the trial court’s ruling to qualify Dr. Jackson as an expert in child abuse pediatrics. This assignment of error has no merit.
Rebuttal Testimony of Victim’s Mother
Next, defendant argues the trial court erred in allowing N.M. to provide rebuttal testimony after she was present in the courtroom to hear other witness testimony, including defendant’s testimony. Defendant claims he was unduly prejudiced by N.M.’s rebuttal testimony be *887 cause she had the opportunity to hear the entire defense and defendant’s testimony and to prepare answers to rebut his testimony.
At the beginning of trial, the State filed a motion to allow the victim’s family to be present in the courtroom during the entire trial, pursuant to La. C.E. art. 615(B), as one of the exceptions to the sequestration statute. The trial court ruled that the victim’s mother and grandmother, who were testifying witnesses, could remain in the courtroom after they testified.
On its own motion the court may, and on the request of a party the court shall, order that the witnesses be excluded from the. courtroom or from a place where they can see or hear the proceedings. La. C.E. art. 615(A). The purpose of sequestration is to prevent a witness from hearing testimony or seeing evidence that might influence his or her own testimony, and “preventing the witness from deliberately tailoring his testimony to that of other witnesses.” Id., 01-2334, p. 5, 833 So.2d at 511; State v. Breaux, 12-0555, p. 6 (La.App. 4 Cir. 2/27/13), 110 So.3d 281, 285. “[T]he language of the statute makes it clear that the sequestration of witnesses is mandatory, unless a witness falls within one of the statute’s four specific exceptions, or if the witness should be allowed to remain ‘in the interests of justice.’ ” State v. Nomey, 04-0401, pp. 1-2 (La.4/2/04), 871 So.2d 1084, 1085. | ¡.¿Under subsection B of the statute, it provides “[t]his Article does not authorize exclusion of any of the following: ... (4) The victim of the offense or the family of the victim.”
Under the exceptions to the statute, the victim’s mother had a right to remain in the courtroom and was not subject to the sequestration order. See State v. Johnson, 01-2334, p. 4 (La.App. 4 Cir. 12/4/02), 833 So.2d 508, 511. We note, however, that the trial court ruled that the victim’s mother and grandmother could remain in the courtroom only after each testified, reasoning, “I have to balance these exceptions as against the clear advantage that those witnesses would receive if they were allowed to listen to everybody else’s testimony.” When the State called N.M. to testify on rebuttal, after the defendant testified and the defense rested, the trial court advised the jury that they would be instructed later on their duty to determine credibility of witnesses. The trial court stated,
And in the jury instructions I’m going to tell you how to gauge the credibility of witnesses.
And I’m going to talk to you about demeanor. And I’m going to talk to you about a few other things. And you’re going to be able to utilize whatever other tools you think may be relevant for purposes of testing one’s credibility and veracity.
And both sides are complaining that both sides had witnesses in the courtroom and therefore both sides had the benefit of witnesses who are testifying now giving the testimony that was heretofore given.
[[Image here]]
... and I’ve instructed the jury as to how it is they can use the fact that she’s been in the courtroom as well as the fact that [defense] witnesses were in the courtroom all day.
Under these circumstances, the trial court did not abuse its discretion in allowing N.M. to remain in the courtroom after her testimony and allowing her to testify as a rebuttal witness. The trial court appropriately weighed the purpose of the sequestration order against the statutory provision excluding victims and ^victim’s family members from a sequestration order, and he advised the jury that they *888 ultimately weigh the credibility of witnesses based on all of the testimony they hear and see. Moreover, the defendant fails to show how he was prejudiced by N.M.’s rebuttal testimony. We have reviewed the entirety of her testimony and her answers to the brief rebuttal questioning from the State and defense were consistent with her earlier testimony. Given the foregoing, we find no abuse of discretion and there is no merit to this assignment of error.
Other Crimes Evidence
In this final assignment of error, defendant argues that the trial court erroneously allowed the introduction of “other crimes” evidence. During trial, the trial court overruled the defense objection to the victim’s testimony that defendant had committed other sexual acts against her in Texas prior to the date of the charged crimes. Defendant argues that any reference to these alleged other crimes against the victim should have been excluded under La. C.E. art. 403 as unfairly prejudicial and misleading.
Generally, courts may not admit evidence of other crimes, wrongs, or acts of a criminal defendant in order to show the defendant is a person of bad character who has acted in conformity therewith. La. C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, evidence of other crimes, wrongs, or acts may be admissible to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1). The evidence must tend to prove a material fact at issue and have some independent relevance other than showing the bad character of the defendant. State v. Jackson, 625 So.2d 146, 149 (La.1993).
| i>RIn this case, the State filed its notice of intent to introduce evidence of other crimes, wrongs or acts under La. C.E. art. 412.2, which provides in pertinent part,
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
Under La. C.E. art. 403, even if the other crimes evidence is relevant and otherwise admissible, the trial court must find that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay. Subject to the relevant statutes and the balancing test, a trial court’s ruling on the admissibility of the other crimes evidence will not be disturbed absent an abuse of discretion. State v. Wright, 11-0141, pp. 10-11 (La.12/6/11), 79 So.3d 309, 316; State v. Cosey, 97-2020, p. 13 (La.11/28/00), 779 So.2d 675, 684.
In advance of this trial, the State informed the defendant that it intended to introduce evidence, pursuant to La. C.E. art. 412.2, that defendant began to sexually abuse the victim, C.C., when she was nine years old, and that this information is documented in medical records and a police report previously provided to the defense. The State did not offer or introduce evidence of any prior arrests or convictions of defendant for sexual acts involving children. The State offered, however, and the trial court permitted, the victim’s testimony regarding other sexual acts committed by defendant against her from the time *889 she was nine until the date of the charged offenses in this case.
|a7Our review of the record does' not reveal any abuse of discretion in the trial court’s ruling to allow the victim’s testimony about defendant’s prior acts of sexually assaultive behavior against her. The victim’s brief testimony about the prior acts arose from her description of the events of January 3, 2012. While testifying about what occurred in defendant’s car on that date, C.C. stated that the defendant told her to tell her mother that “this only happened one time.” The State asked if that was the truth and she answered “No”, prompting the State to question ‘When did it happen before?” C.C. explained that these sexual acts started when she was nine years old, while living in Texas with her mother and defendant, and did not end until the time in January, 2012. At this point, the defense objected to this testimony under La. C.E. art. 403 and the trial court overruled the objection. The State proceeded to ask C.C. nine brief questions about the prior acts in Texas. She gave brief answers describing how defendant would call her into her mother’s room when her mother was not home, would pull off her clothes, make her get on top of him, and he would put his mouth on her. The State then returned to questioning C.C. about the events of January 3. On cross-examination, the defense asked C.C. whether she understood that “we’re here today because of [what] happened in January?” She stated yes.[8] Although C.C. did not testify in great detail about the prior sexual acts that defendant committed against her in Texas, her brief description about defendant pulling her clothes off, having to get on top of him and having him put his mouth on her were consistent and similar in nature with her description of what occurred on January 3, 2012. See Wright, 11-0141, p. 13, 79 So.3d at 317. Given the manner in which the evidence of prior sexual acts |2Sby defendant against C.C. was introduced, it was relevant to show defendant’s intent and absence of mistake by similar acts.
We also fail to find that the relevant, probative nature of this evidence is outweighed by a prejudicial effect. The State did not introduce lengthy testimony focused on the prior acts that occurred in Texas. The State’s case and the testimony of all other witnesses focused clearly on the events of January 3, 2012, as the basis of the charged offenses. The defendant has failed to show the jury was misled or confused by the admission of C.C.’s testimony about the prior acts occurring in Texas. In consideration of the admissibility requirements for other crimes evidence under La. C.E. art. 412.2 and the balancing test under La. C.E. art. 403, we find no abuse of discretion by the trial court in admitting the other crimes evidence in this case. This assignment of error is without merit.
CONCLUSION
For the reasons stated herein, we find there is sufficient evidence to sustain the defendant’s convictions for sexual battery, aggravated rape, and second degree kidnapping; and we find no merit to any of defendant’s assignments of error. Thus, we affirm defendant’s convictions and sentences.
AFFIRMED.
BELSOME, J., concurs in the result.

. Sexual battery, a violation of La. R.S. 14:43.1, is a responsive verdict to aggravated rape. La.C.Cr.P. art. 814(A)(8).

. The initials of the victim and the victim’s family members are used in order to protect the identity of the victim. See La. R.S. 46:1844(W).

. C.C. further testified that "this stuff” was happening in Texas when her mom was not at home. The defendant would call to C.C. to come into her mom’s room and he would pull her clothes off and make her get on top of him. She stated that he would put his mouth on her and then she would see white stuff coming from his privates.

. The defense requested a voir dire of Dr. Jackson on her qualifications as an expert in child abuse pediatrics. The trial court conducted a predicate examination after which the trial court qualified Dr. Jackson as an expert in child abuse pediatrics while noting that that field is brand new.

. N.M. testified that she decided to ride back to Houston with the defendant on the night of the incident because she had no other way of getting there to collect her belongings and withdraw the children from school in Houston. N.M. left C.C. with her mother in New Orleans because she was going to return to New Orleans as soon as she packed up her things and moved out of the apartment in Houston.

. The three counts of aggravated rape were distinguished on the jury verdict form as (count one) penis to vagina, (count two) oral to penis, and (count three) oral to vagina.

. Pursuant to La.C.Cr.P. art. 814, the verdict form provided all of the following verdicts responsive to the offense of aggravated rape: (1) guilty as charged; (2) guilty of attempted aggravated rape; (3) guilty of forcible rape; (4) guilty of attempted forcible rape; (5) guilty of simple rape; (6) guilty of attempted simple rape; (7) guilty of sexual battery; (8) guilty of molestation of a juvenile; (9) guilty of attempted molestation of a juvenile; (10) guilty of indecent behavior with a juvenile; (11) guilty of attempted indecent behavior with a juvenile; (12) not guilty.

. We note, over the course of her lengthy testimony under direct and cross examination covering nearly thirty pages of trial transcript, C.C.’s testimony about the prior acts that occurred in Texas covered only one page of testimony.