EDWIN A. LOMBARD, Judge.
| iThe defendant, Jeffery Washington, appeals the trial court’s judgment convicting him of obscenity and sentencing him to three years at hard labor. After review of the record in light of the applicable law and arguments of the parties, we affirm the judgment.

Facts and Procedural History

Licensed practical nurse K.D.[1] testified that she was employed by the Orleans Parish Sheriffs Office. She stated that on February 15, 2014, while conducting a medication pass with inmates located on Tier B4 in the Templeman Phase 5 building, she observed Washington standing near the front of his cell, with his hands on his penis and making a stroking motion. Making eye contact with her, he asked “what’s wrong with you?” K.D. testified that she informed Deputy Brandon Joseph (“Dep. Joseph”), who was accompanying her on the medication pass, of the incident. Dep. Joseph walked to the cell, and they continued with the medication pass. After the medication pass ended, K.D. reported the incident to her supervisor. She also prepared a written statement for Sgt. Lester Burns (“Sgt. Burns”), who investigated the incident.
pDep. Joseph testified that in February 2014, he was employed by the Orleans Parish Sheriffs Office as a facility deputy. *73 He handled the day-to-day operations inside the jail. On February 15⅛ 2014, he was assigned to Tier B of the Templeman Phase 5 building. He testified that he assisted K.D. with the medication pass. He further stated that he was standing in the doorway of the dorm and had a direct line of sight on K.D. As K.D. approached the last cells at the end of the tier, he observed Washington standing at the cell gate with his hands on his genital area and making a stroking motion with his hands.' K.D. alerted him of Washington’s behavior. He explained that he advised her to leave the area and report the incident to her supervisor. Dep. Joseph inform'ed his supervisor, Sgt. Burns, of the incident. Sgt. Burns conducted an investigation; however, at the time of the trial, he' was no longer employed by the Orleans Parish Sheriffs Office. ■ >>
Agent Troy Phares (“Agt. Phares”), who is a member of the Investigative Services Bureau of the Orleans Parish Sheriffs Office, conducts investigations of incidents that occur within the Orleans Parish Prison. He testified that he handles inmate-on-inmate and inmate-on-deputy crimes. He further explained that Templeman Phase 5 houses psychiatric, suicidal, and protective custody inmates. The tier on which Washington was housed is a protective custody tier. Agt. Phares described how the tier was set up and how medication passes were conducted. He stated that he did not handle the investigation of the present matter. He testified that he has investigated obscenity cases, and safety is a primary concern in obscenity cases because such cases often involve sexually aggressive acts.
On February 25, 2014, Washington was charged by bill of information with obscenity, in violation of La. R.S. 14:106(A)(1). After pleading not guilty at his arraignment, the trial court found probable cause following a preliminary hearing. |SA jury trial was conducted on May 20, 2015, and he was found guilty as charged. Washington filed motions for new trial and post-verdict judgment of acquittal, both of which were denied by the trial court on June 12, 2015. On the same date, he waived delays, and the trial court sentenced him to serve three years at hard labor. The sentence was to be served consecutively to any other sentence he was serving, and he was given credit for time served.
Washington timely filed the instant appeal and raises one assignment of error for review: the trial court erred when it denied his challenge for cause of a potential juror who knew the complainant, K.D., and worked with her for six years at Orleans Parish Prison.

Applicable Law

The trial court is vested with broad discretion when ruling on challenges for cause during jury selection, and the appellate court should only reverse a ruling where a review, of the entire voir dire reveals that the. trial court abused its discretion. State v. Odenbaugh, 10-0268, p. 24 (La.12/6/11), 82 So.3d 215, 237. “Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges.” Id. “Thus, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate ‘(1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges.’ ” Id. (quoting State v. Robertson, 92-2660, p. 4 (La.1/14/94), 630 So.2d 1278, 1281).
In -the instant matter, Washington exhausted all of his peremptory challenges. Therefore, we must determine whether the trial court erred in denying his challenge for cause.
*74 | ¿La.Code Cr. Proc. article 797 provides in pertinent part:
■ The state or the defendant may challenge a juror for cause on the ground that:
⅝ * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdictf.]
Under La,Code Cr. Proc. art. 797(3), a juror’s relationship with a witness in the case who is not the defendant or the injured person is not inherently suspect or grounds for cause. In State v. Allen, 95-1754, pp. 13-14 (La.9/5/96), 682 So.2d 713, 724, the Louisiana Supreme Court stated:
[Ejven where a prospective juror knows the victim, the defense must show the juror’s acquaintance with the victim is such that it is reasonable to conclude it would influence the juror in arriving at a verdict to be a sufficient ground for a challenge for cause. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied.
When a juror expresses a predisposition as to the outcome of a trial, a challenge for cause should be granted. State v. Lindsey, 06-255, p. 3 (La.1/17/07), 948 So.2d 105, 107-108. If after subsequent questioning, or rehabilitation, the juror exhibits the ability to disregard previous views and make a decision based on the evidence presented at trial, the challenge is properly denied.. Id., 06-255, p. 3, 948 So.2d at 108. When assessing whether ' a challenge for cause should be ^granted, the district judge must look at the juror’s . responses during his or her entire testimony, not just “correct” isolated answers or, for that matter, “incorrect,” isolated answers. Id. A prospective juror’s seemingly prejudicial response is not .grounds for an automatic challenge for cause, and a district judge’s refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence, Id., 06-255, p. 4, 948 So.2d at 108. .
An appellate court must review the entirety of the voir dire to ascertain whether there is anything to indicate that a prospective juror would be anything but fair and impartial. State v. Porter, 13-0357, p. 20 (La.App. 4 Cir. 10/8/14), 151 So.3d 871, 885, writ denied, 14-2353 (La.9/11/15), 176 So.3d 1037.
In Porter, the defendant argued that the trial court erroneously denied the challenge for cause of a juror who had worked in the NOPD evidence room and knew one of the investigating officers. Defense counsel challenged the juror for cause, arguing that she could have handled evidence in the case and. spoken with the officer about the case. In denying the defendant’s challenge for cause, the trial court noted that the potential juror had no knowledge or memory of handling' evi *75 dence in this case or of speaking with the investigating police officer about the case. The juror also did not. indicate that she knew any of the other witnesses, particularly the victim or defendant, or any counsel in this case. She specifically stated that she could be fair and impartial,to both sides despite the fact that she knew the investigating officer.
On appeal, we held, after reviewing the entire voir dire, that there was nothing to suggest that the juror’s employment or knowing the investigating officer | ¿would affect her ability to be fair and impartial. The Court found no abuse of the. trial court’s discretion in the denial of the defendant’s challenge for cause. Id., 13-0357, pp. 20-21,151 So.3d at 885.
Additionally, other Louisiana appellate courts have similarly held that trial courts did not abuse their discretion where in denying challenges for cause where jurors knew a witness(es), but testified that their ability to be fair and impartial would be unaffected. See State v. Authier, 46,903 (La.App. 2 Cir. 4/25/12), 92 So.3d 494; State v. Magee, 04-1887 (La.App. 1 Cir. 5/6/05), 916 So.2d 191; State v. Batiste, 15-100 (La.App. 3 Cir. 6/3/15), 165 So.3d 1262.

Discussion

In the matter sub judice, Washington challenged Juror No. 1 for cause on the basis that the juror knew the witness, K.D., during high school-and worked with her for six years. He argued that Juror No. 1 was unable to: be fair and impartial, and to give K.D. the same level of scrutiny that other jurors would give and what she should give to other witnesses. Objecting to his challenge, the State noted that although the juror acknowledged that she knew K.D. and that the juror worked at the Orleans Parish Sheriffs Office, she also stated that her ability to be a fair and impartial juror would not be affected. The trial court then denied Washington’s challenge for cause.
Washington also ■ asserted the denial of the challenge for cause in his motion for new trial. When the trial court denied the motion for new trial, the trial court noted that Juror No.l stated that she could be fair and impartial.-
At the beginning of voir ■ dire, Juror No.l informed the trial court that she knew K.D. , Juror No.l stated that she knew K.D. fi’om high school and had worked with her at the Orleans Parish Sheriffs Office. Juror No. 1 had been employed at 17Orleans Parish Prison as a medical clerk. At the time of trial,. Juror No. 1 was not employed at the Orleans Parish Sheriffs Office. Juror No. 1 specifically stated that her prior employment at the Orleans Parish Sheriffs Office and knowledge of K.D. would not affect her ability to be a fair juror.
When defense counsel questioned her about her present state of employment, Juror No. 1 stated that she was unemployed. Counsel asked her if she enjoyed working for the sheriffs department. Juror No. 1 responded by stating that she did enjoy working there, but she did not enjoy the atmosphere. When questioned why she did not like the atmosphere, Juror No. 1 stated that there was a lot of profanity at the jail. She .-stated that while she never experienced any of the inmates’ obscenity, she had heard numerous stories from the deputies and nurses. It made her feel very uncomfortable.
The jurors were also asked if they had any family members would worked in law enforcement. Juror No. 1 stated that her boyfriend worked at the Sheriffs Office, and she had several friends and acquaintances who worked for the Sheriffs Office. Her boyfriend also knew K.D. Defense counsel further questioned Juror No. 1 about her friendship with - K.D. Juror *76 No.l stated that she went to high school with K.D. for three years; KD. was a year ahead of her. She and KD. have mutual friends, including the juror’s boyfriend. However, she does not see KD. on a regular basis. The last time the juror saw KD. was in October 2014, when the juror stopped working for the Sheriffs Office. Juror No, 1 stated that she and KD. were acquaintances in high school; they were friendly to each other but not really friends. Juror No. 1 and KD. worked together for a total of six years. They worked together for three years, and then KD. left. When KD. came back to the IsSheriffs Office, they worked together for three years before the juror left the Sheriffs Office.
Defense counsel then questioned Juror No.l’s ability to judge KD.’s credibility and whether the juror’s knowledge of KD. would affect her decisions.
By Mr. Barksdale:
■ Okay. Would you be able to — would you be able to question — and would you question and judge her testimony the same way you would anybody else who came and sat in here?
By Juror No. 1:
Yes.
By Mr. Barksdale:
If you found that she was — she was not credible — and that affected your decision — would you feel uncomfortable seeing her in the future? ■
By Juror No.l:
No.
When asked by defense counsel, what she thought about the reasonable doubt standard, Juror No.l replied:
By Juror No.l:
I think that if we’re going for reasonable doubt — and I’ve heard all of the testimony and there’s no doubt in my mind that either he did it or he did not do it, it’s a reasonable burden.
By Mr. Barksdale:
Do — and you think — do you think that’s fair, to make the state prove it to that level to you: [sic] beyond all reasonable doubt?
By Juror No.l:
I do think it’s fair. I think that once everything is presented and there is no doubt in my mind that' either he’s guilty or not guilty, they proved their case. By Mr. Barksdale:
Okay. And the state today is gonna try to prove beyond all reasonable doubt that Mr. Washington is Rguilty. If you have some doubt that he’s innocent and some doubt that he’s guilty, what would be your verdict?
By Juror No.l:
I would have to vote not guilty, if I had any doubt. But if I was adamant that he did it and he was accused and there was evidence presented that he is guilty of it, I would vote guilty.
Defense counsel then questioned the prospective jurors about their views about prisoners and whether they felt that people who were in jail were more likely to commit crimes. Juror No. 1 responded:
By Juror No.l:
If they’re in jail, obviously, they committed some type of crime. I have — I was an employee at the sheriffs office. ■I have witnessed several different people coming through the doors on several different occasions, stating: I’m not coming back. And they walk through the doors a couple of months later for maybe a similar reason — maybe something different. If you’re in jail, you committed a crime. So I think that you can be rehabilitated. But, on most occasions, they are not. And they come back on several different occasions.
*77 By Mr. Barksdale:
Do you think everybody’s [sic] who’s [sic] under the — under the jurisdiction of the Orleans Parish Prison has, 'in fact, committed a crime?
By Juror No.l:
I would say 90 percent of them, yeah. By Mr. Barksdale:
But you understand that the people who are there, for the most part, are people who haven’t been convicted of whatever current crime they’re being held for yet.
By Juror No.l:
Yes.
By Mr. Barksdale:
Okay. Does anybody not understand that the Orleans Parish Prison is a — is a pretrial detention center? That the vast majority of people there, only a small, small minority have actually been convicted of the crime for which they’re being housed.
|j (iJuror No. 1 was the second juror that defense counsel sought to challenge for cause. Defense counsel stated that the basis of his challenge was the juror’s knowledge of K.D. and his belief that she would be unable to give K.D. the same level of scrutiny that other jurors would and that the juror would give other witnesses. In response, the State argued that the juror testified that her association with K.D. would not affect her ability to serve as a juror, and that she believed she could be fair and impartial. The trial court then denied Washington’s challenge for cause. At that time the court did not give any reasons for its ruling. However, when Washington asserted the denial of the challenge for cause in his motion for new trial, the trial court noted that Juror No.l stated that she could be fair and impartial.
Our review of the voir dire transcript reveals that the trial court was correct in its findings and did not abuse its discretion when it denied Washington’s challenge for cause. The transcript indicates that Juror No. l’s relationship to K.D. was more of an acquaintance than friend. The juror stated while she had known K.D. in high school, K.D. was a year ahead of her. They were not friends, but were friendly and acknowledged each other. Juror No. l’s work relationship with K.D. was intermittent; they worked together for three years at one point, and later worked together for another three years. She further explained that she and K.D, did not socialize together. She had last seen K.D. in October 2014 — approximately seven months before trial — when the juror quit working for the Sheriffs Office. Juror No. 1 also clearly stated that her knowledge of K.D. would not affect her ability to judge KD.’s credibility, and she would be fair and impartial.
|nThe facts of the present case are very similar to Porter as well as the cases from other circuit courts, in which the courts have found no abuse of discretion in the trial court’s denial of the defendant’s challenge for cause. In the case at bar, Juror No. 1 was an acquaintance and prior coworker of K.D. Juror No. 1 clearly stated that she could be fair and impartial. The trial court did not abuse its discretion when it denied the defendant’s challenge for cause.
Furthermore, Washington also asserts on appeal that the chállenge for cause' included the basis of the juror’s statements about the stories of obscenity she heard about from other employees at Orleans Parish Prison and her statements concerning the recidivism of the inmates housed in Orleans Parish Prison. He contends that these statements show bias against him. As the State argues, Wash *78 ington did not rafee these issues in his challenge for cause. Under La.Code Cr. Proc. art. 800, “[a] defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of the' objection.” These issues are precluded from appellate review because Washington did not raise these issues when he made his challenge for cause. This assignment of -error is without merit.
Lastly, a review of the record for patent errors reveals none.

DECREE

For the foregoing reasons, the conviction and sentence of Jeffery Washington is affirmed.
AFFIRMED
BELSOME, J., dissents with reasons.

. Complainant K.D.’s initials are being be used because of the sensitive nature of the offense.