656 So.2d 772 (1995)
STATE of Louisiana
v.
Kim R. BROOKS.
No. 94-KA-1031.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
*773 Linda Davis-Short, Staff Appellate Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for appellant/defendant Kim R. Brooks.
John M. Mamoulides, Dist. Atty., 24th Judicial Dist., Terry M. Boudreaux, Asst. Dist. Atty., Research & Appeals, Courthouse Annex, Gretna, for appellee State.
Before KLIEBERT, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Kim R. Brooks, appeals from his conviction of second degree murder and sentence to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence, and remand.
Grace Munson was shot to death on August 12, 1993. Defendant was arrested and tried by a jury on August 16 through 19, 1994. Defendant was found guilty as charged of second degree murder. On September 7, 1994 he was sentenced to life in prison at hard labor without benefit of parole, probation or suspension of sentence, with credit for time served. Defendant appeals from his conviction and sentence.
At trial, Officer Kenneth Latour testified that on August 2, 1993 he responded to a call shortly after 12:30 a.m. from an apartment complex at 321 Bengal Road in River Ridge, Louisiana. He proceeded to apartment 20 and found Grace Munson, the victim, on the floor bleeding from the left side of her chest. He notified headquarters and requested an ambulance. There were three other people present in the apartment who informed Officer Latour that the victim had run into the apartment and said that defendant shot her.
*774 Deputy Caravella testified that he received a call about the shooting. He had information about the description of the suspect, the name "Kim Brooks", and a description of defendant's vehicle. The deputy saw a vehicle matching the description and stopped it. The passenger got out of the vehicle and approached the deputy saying, "I'm Kim Brooks. Don't shoot." Defendant also told the officer that the gun was at his uncle's house.
Deputy Thibodeaux testified that he went to defendant's uncle's apartment and found the weapon laying by the front door on the porch. The weapon had a fully loaded clip and a round in the chamber.
Sergeant James Trapani testified that when he and Officer Hebert arrived on the scene, the victim was breathing, but unconscious. He stated that he found an empty clip on the sidewalk directly in front of 321 Bengal Road. Several spent casings and a spent projectile were also found at the scene. After the death of the victim, defendant was arrested and informed that he was under investigation for murder.
Susan Garcia, the forensic pathologist who performed the autopsy, testified that there were five entrance wounds in the body. The lethal wound entered the victim's left arm, went through the arm and reentered her body, injuring both lungs, her heart and liver. Four of the entrance wounds were inflicted from the front, left side. The fifth wound entered from the back.
Louise Walzer testified as an expert in the area of firearms. She tested the weapon that was recovered from defendant. She testified that she recovered one bullet from the scene and one from the morgue that were fired by the recovered weapon. She further stated that the safety on the weapon was in working order. The trigger pull was between nine and ten pounds. With the safety off, the weapon fires one time with each pull of the trigger.
An eyewitness testified that defendant had been drinking beer before the incident. When defendant pulled up in the parking lot outside of the apartment complex, the victim was standing in front of the building. Defendant got out of his car and spoke with the victim and they argued. Defendant went around the back of his automobile to the driver's side and opened the door and pulled out a gun. Defendant was waiving the gun at the victim. She said something to him and he shot her. The witness said that he heard several shots and saw the victim start to run toward the apartments. Defendant shot again. He then reloaded his gun and got in his car and left. Another witness, Monique Lewis, corroborated that defendant shot at the victim after she had started running back towards the apartments. Two other witnesses testified that in an earlier conversation with defendant, he told them that he was going to kill the victim. They did not take him seriously and did not report the threat.
Defendant testified in his own defense. He stated that he was intoxicated and that he didn't remember parts of the night. He denied ever telling anyone that he was going to kill the victim. He stated that they were to be married two days after the incident. He testified that he and the victim were arguing and that he pushed her. When he did, the gun went off. Defendant stated that he did not recall pulling the trigger that many times. He stated that he ran after the victim to ascertain whether she was alright and the apartment occupants told him to go away. He testified that he told them that he would be at his mother's house.
Defendant's testimony was corroborated in part by his uncle, Frank Mabry, who testified that he and defendant had started drinking around 4:30 p.m. on August 11, 1993, when they purchased a case of beer and a pint of gin. He further stated that they finished the case of beer around 10:30 p.m. and went and bought another case. He stated that defendant was intoxicated when defendant left his uncle's house at 11:30 p.m.
The three occupants of the apartment where the victim ran and collapsed did corroborate that defendant ran after her and asked if she was alright. One of the occupants told the defendant to go away.
On appeal defendant assigns two errors and requests a review for errors patent on the face of the record. In his first assignment *775 of error, defendant argues that the court erred in denying his request to conduct recross examination of two prosecution witnesses, Susan Webb and Officer Trapani. Defendant contends that in both instances new matters were raised by the state on redirect and that, although he failed to object to the redirect questions of Webb, he was denied his right to a fair trial by the denial of his attempt to recross examine the witnesses.
After she was shot, the victim ran to Susan Webb's apartment and collapsed. During her direct examination at trial, Webb testified about the layout of her apartment complex and grounds. During the redirect examination by the prosecutor, she was asked about the path that the victim would have taken in running from the parking lot to her apartment. She testified that the victim would have gone one of two different ways. After these questions were answered, the prosecutor ended her questioning and defense counsel requested an opportunity to recross examine Webb. The trial court denied defendant the opportunity for recross examination.
The record indicates that defense counsel did not object immediately after the state posed the hypothetical questions to the witness. However, despite his failure to object to the questions, a defendant is allowed the opportunity to recross examine a witness on new matters brought out on redirect examination. La.C.E. art. 611(D). That statute provides in pertinent part:
Scope of redirect examination; recross examination. A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.
Generally, the matter of permitting recross examination is in the sound discretion of the trial judge and in the absence of some showing of an abuse of that discretion, and resulting prejudice, his ruling will not be disturbed on appeal. State v. Cordier, 297 So.2d 181 (La.1974); State v. Wright, 593 So.2d 759 (La.App. 5th Cir.1992), writ denied, 599 So.2d 313, cert. denied, ___ U.S. ___, 113 S.Ct. 340, 121 L.Ed.2d 257 (1992).
Defendant's arguments on this issue fail for two reasons. First, the redirect questions did not involve new matters but only a clarification of previous testimony. The witness was shown the same picture of the layout of the apartment complex that she had been shown in her earlier testimony. The redirect questions were only clarifying the fact that the victim could have taken either of two different routes in coming to the witness' apartment after the shooting. During her direct examination, the witness was asked about the apartment layout and defense counsel had an opportunity to question her about the layout on cross examination. Thus, we find that there were no new matters covered on redirect which would have entitled the defendant to recross examination.
Furthermore, defendant's argument on this issue lacks merit because he has failed to allege or show any prejudice suffered as a result of his being denied the right to recross examine the witness. Defendant admitted to the shooting and the trial centered on defendant's intent. The testimony at issue here, concerning the route the victim took to get to Webb's apartment is not relevant to the issue of defendant's guilt. After a review of the record, it cannot be said that this testimony contributed to the verdict. Thus, even if we held that the trial court did err in refusing to allow defendant to recross examine Webb, we find that the error was harmless. See State v. Walters, 523 So.2d 811 (La.1988); State v. Ehrhard, 576 So.2d 1209, 1210 (La.App. 5th Cir.1991).
On redirect, the prosecutor asked Sergeant Trapani about the portion of defendant's statement claiming that the weapon's safety was in the "on" position. Defense counsel objected, saying that the question was beyond the scope of redirect and that he had not asked questions about that portion of defendant's statement concerning the gun. The trial court overruled the objection and allowed the prosecutor to ask the question about the statement. Then, in response to *776 the prosecutor's question, the officer testified that defendant had stated that the gun's safety was in the "on" position.
Defendant contends that the trial court erroneously denied his right to recross examination after the state asked Sergeant Trapani about new matters on redirect examination. Defendant argues that despite defense counsel's objection to this question, the trial court allowed the questioning to continue.
While the record does not clearly indicate that defense counsel requested an opportunity to conduct recross-examination, as he argues in his brief, we will consider defendant's argument. Like the prior argument concerning the other witness, we find that the state's redirect did not cover a new matter, not referred to in direct or cross examination. Furthermore, as before, there is no prejudice to defendant alleged or evident from the question asked on redirect examination by the state. The witness was questioned on direct examination concerning the statement that defendant gave regarding the incident. The witness was also cross examined about the statement. Thus, this would not be a new matter on redirect. Therefore, there was no error in allowing the state's additional question about the statement on redirect, or in not permitting recross examination.
Furthermore, the question in no way caused any prejudice to defendant. The question related to a part of defendant's statement in which he told the officer that the safety was engaged on the weapon when he was handling it and it discharged. Defendant's entire statement was read to the jury. And, defendant testified at trial about the safety on the gun and had opportunity to address any parts of his earlier statement to police. Thus, because the same evidence was admitted anyway when defendant's entire statement was read to the jury and the defense had sufficient opportunity to present evidence, addressing and rebutting any facts concerning the safety on the gun, any error in allowing the officer to testify concerning defendant's statement about the safety was harmless. See State v. Ehrhard, 576 So.2d at 1210.
In his second assignment of error, defendant contends that the trial court erred in denying him the opportunity to explain one of his answers during his cross examination by the state. Defendant argues that this denial was "highly prejudicial", "repetitive" and "served no purpose other than to highlight that portion of the [his] ... testimony....". The state contends that defendant's testimony was elusive and vague and that it was necessary for the prosecutor to "question him closely when he took the stand before the jury...."
During the state's cross examination, defendant was questioned about (1) the actual events surrounding the firing of the gun, (2) whether defendant actually pulled the trigger and (3) the number of times the trigger was pulled. The prosecutor asked defendant whether or not he had pulled the trigger. Defense counsel objected and the trial court overruled the objection.
The trial court is vested with much discretion in controlling the scope and extent of cross examination and his rulings will not be disturbed absent an abuse of that discretion. State v. Garrison, 400 So.2d 874 (La. 1981).
A review of the record indicates that defendant had already admitted pulling the trigger when the prosecutor asked the question again. However, in his testimony defendant continued to assert that the gun was fired accidentally. Thus, the state had ample reason to try and clarify the point by asking defendant again. Moreover, defense counsel had ample opportunity to allow defendant to explain his answers on redirect examination. Therefore, we find defendant's argument, that the trial court abused its discretion in denying defendant's objection to the state's question during cross examination, has no merit.
Finally, defendant requests an error patent review and notes an error regarding the trial court's failure to instruct defendant of the prescriptive period for post conviction relief mandated by La.C.Cr.P. art. 930.8 C.
*777 In reviewing this case under La. C.Cr.P. art. 920, we find no errors except, as pointed out by defendant, that the trial court failed to inform defendant of the prescriptive period for post-conviction relief which is mandated by La.C.Cr.P. art. 930.8 C. Failure to so inform defendant does not constitute grounds for reversing the sentence. La. C.Cr.P. art. 921. See State v. Boyd, 94-641 (La.App. 5th Cir. 12/28/94), 649 So.2d 80; and State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289. The case is remanded and the trial judge is ordered to inform defendant of the provisions of La. C.Cr.P. art. 930.8 by sending appropriate written notice to him within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of this proceeding.
Accordingly, for the reasons stated above, defendant's conviction for second degree murder is affirmed and his sentence to life imprisonment without benefit of parole, probation or suspension of sentence, with credit for time served, is affirmed. The case is remanded to the trial court with instructions to notify defendant of the provisions in La. C.Cr.P. art. 930.8.
AFFIRMED AND REMANDED.