# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 15-100


**STATE OF LOUISIANA**

**VERSUS**

**DAVIAN BATISTE**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 11-74
HONORABLE VINCENT BORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.


**AFFIRMED.**



**J. Phillip Haney**
**District Attorney**
**Robert Vines**
**Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA   70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA   70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Davian Batiste**

**AMY, Judge.**

The State alleged that the defendant and three others acted in concert in the armed robbery of three individuals in a barber shop. During the robbery, one of the alleged perpetrators shot and killed the proprietor of the business. A jury convicted the defendant of second degree murder and three counts of armed robbery, as charged, for his role in the crimes. The defendant appeals, asserting that the trial court erred in denying his challenges for cause of two jurors and in its denial of a *Batson* challenge following the State's use of peremptive strikes to remove three jurors. For the following reasons, we affirm.

## Factual and Procedural Background

The State alleged that, on September 23, 2010, Stephen Bell and Craig Gilliams entered Cliff's Impressive Cuts Barbershop in New Iberia, while masked and armed with handguns. The State asserted that Mr. Bell took cash from proprietor Clifton Williams and customer Corey JeanLouis in the front of the store, whereas Mr. Gilliams took property from barber Shawn Evans and customer Dennis Guidry in the rear parlor of the store. During the occurrence, Mr. Bell shot Mr. Williams, resulting in the proprietor's death.

Pertinent to the instant appeal, the State alleged that Mr. Bell and Mr. Gilliams were driven to and from the vicinity of the crime in a vehicle driven by Anthony Daye and in which the defendant, Davian Batiste, was a passenger. The State maintained that the four men, including the defendant, had the knowledge of and the intent to rob the barber shop and that the men knowingly and intentionally killed Mr. Williams during the perpetration of that offense.

By bill of indictment, a grand jury charged the defendant with the second degree murder of Mr. Williams, a violation of La.R.S. 14:30.1. The State further

charged the defendant with three counts of armed robbery with the use of a firearm. *See* La.R.S. 14:64 and La.R.S. 14:64.3. Following a multi-day trial, a jury convicted the defendant as charged. The trial court thereafter imposed a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence on the second degree murder conviction. With regard to the armed robbery convictions, the trial court sentenced the defendant to serve ninety-nine years imprisonment at hard labor for each conviction, without benefit of probation, parole, or suspension of sentence and recognized the statutorily-required consecutive, five-year enhancement for the use of a firearm in the commission of the armed robberies. The trial court ordered that the sentences for the convictions be served concurrently.

The defendant appeals, assigning the following as error:

I.     The trial court erred in denying defense counsel's challenges for cause.

II.    The trial court erred in denying defense counsel's *Batson* challenge.

## Discussion

*Errors Patent*

Our review for errors patent on the face of the record, completed in accordance with La.Code Crim.P. art. 920, reveals no such errors.

*Challenges for Cause*

The defendant first questions the trial court's denial of his challenges for cause of prospective jurors Leilani Touchet and Crystal Broussard. Louisiana Constitution Article 1, § 17 provides that a defendant has "a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily."

Additionally, La.Code Crim.P. art. 797[1] provides the grounds for either the State or the defendant to challenge a juror. In ruling on a challenge for cause, a trial court is vested with broad discretion. *State v. Odenbaugh*, 10-268 (La. 12/6/11), 82 So.3d 215, *cert. denied*, _ U.S. _, 133 S.Ct. 410 (2012). Its ruling will be reversed only when a review of the entire voir dire reveals an abuse of discretion. *Id.* In the event a defendant has exhausted his or her peremptory challenges, a trial court's erroneous denial of a challenge for cause constitutes reversible error. *Id.*

As the present case involved an offense(s) necessarily punishable by imprisonment at hard labor, the defendant possessed twelve peremptory challenges. *See* La.Code Crim.P. art. 799. The record reflects that he did, in fact, use all twelve challenges, including those that were used to strike Ms. Touchet and Ms. Broussard from the panel. We review the trial court's denial of the challenges for cause of the jurors in turn.

Ms. Touchet

Defense counsel challenged Ms. Touchet's service due to concerns regarding her acceptance of the law of principals, her outside knowledge of the

---

[1] Louisiana Code of Criminal Procedure Article 797 provides:

The state or the defendant may challenge a juror for cause on the ground that:

(1) The juror lacks a qualification required by law;

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

(4) The juror will not accept the law as given to him by the court; or

(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

offense, her thoughts regarding the necessity of a defendant's testimony, and her concerns regarding her time away from work. With regard to the law of principals, the State and Ms. Touchet entered into a colloquy regarding a hypothetical situation involving two individuals committing the offenses of armed robbery and murder when only one was armed, although both had knowledge of the offense. When the State developed its line of questioning involving the law of principals and inquired whether that it "ma[d]e sense[,]" Ms. Touchet replied: "Yeah, it makes sense, but it still like it would be two people doing two different things and getting charged with the same crime." When the State returned to Ms. Touchet after questioning other jurors, and asked whether she had any "reservations[,]" Ms. Touchet responded: "Um, no, I think I got it now."

The attorneys further questioned Ms. Touchet in chambers about her statement that she may have heard something about the case. She explained that she had heard that the defendant was involved in the offense. However, when the State inquired whether she would be able to make her decision based solely on the testimony and evidence presented in the courtroom, she responded: "Yes." Similarly, Ms. Touchet confirmed during the exchange in chambers that she felt that she would be able to participate as a juror without distraction by the fact that she would be away from work, as long as the trial did not go too long. Finally, when questioned about the defendant's right not to testify at trial, she denied that she would presume that a defendant who did not testify was doing so merely due to fear that he would incriminate himself.

After questioning, the defendant challenged Ms. Touchet for cause, citing the cumulative nature of the various issues discussed with her. The trial court denied the challenge, stating:

4

So basically your challenge for Cause was based on the not testifying and reasons not to testify and the other stuff that she was confused about. I mean she was stronger out there than she was in here[2] about it any other Cause issue; so we will deny the Challenge for Cause.

Following that denial, however, the defendant did not lodge an objection. Louisiana Code of Criminal Procedure Article 800 provides that: "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection." Accordingly, review of the defendant's assignment in this regard is precluded.

Ms. Broussard

The defendant did, however, timely object to the trial court's denial of his challenge for cause of Ms. Broussard. During questioning, Ms. Broussard indicated that she knew of the case because she and the victim, Mr. Williams, "were friends for a while" and that she had known him in school. When the trial court asked her whether she had known Mr. Williams, she stated: "We knew him from school and everything and like that. Yeah, I had been knowing him for a while. For a long period of time." However, the trial court asked her whether "based upon that information, could you be fair and impartial to the State knowing that? And could [you] be fair to the State and to the Defense . . . ?" She replied: "I can." Upon subsequent questioning by the defense counsel, she stated that: "I don't feel that I could be unfair to anyone or, you know, I to both, both parties. I believe that I can be fair." She later explained that: "I know that I would have to put my personal relationships, or friendship let's say, aside and be fair."

---

[2] The record reflects that several jurors were further questioned outside the presence of the remaining prospective jurors. Those exchanges were transcribed and included in the record.

5

In denying the defendant's challenge for cause, the trial court noted its understanding that Ms. Broussard's description of her friendship with the defendant related to their past status as schoolmates and that "there was no more than that." Louisiana Code of Criminal Procedure Article 797(3) provides a challenge for cause if a prospective juror's relationship with "the person injured by the offense . . . is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]" Having reviewed the transcript in its entirety, however, we find no abuse of the trial court's discretion in its determination that Ms. Broussard's relationship with the victim, as described during voir dire, did not meet the standard of Article 797(3). Instead, Ms. Broussard did not describe a relationship of such a nature so as to indicate that it would influence her verdict. Rather, she specifically denied that potentiality and confirmed her ability to be impartial to both the State and the defense.

This assignment lacks merit.

*Batson Challenges*

In his remaining assignment of error, the defendant argues that the State impermissibly used peremptory strikes to remove three prospective jurors and that the strikes were racially discriminatory. The defendant asserts that the trial court erred in denying its challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). The Supreme Court of Louisiana has explained that, pursuant to *Batson*, "an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race." *State v. Bender*, 13-1794, p. 3 (La. 9/3/14), 152 So.3d 126, 128. It observed that: "The *Batson* analysis involves a three-step framework[,]" as follows:

> First, the party raising the *Batson* challenge must make a *prima facie* case of racial discrimination. If the defendant is unable to make

out a *prima facie* case of racial discrimination, then the *Batson* challenge fails, and it is not necessary for the prosecutor to articulate "race-neutral" explanations for his strikes. . . .

In the second *Batson* step, the burden of production or going forward shifts to the prosecutor, who must offer a "race-neutral" explanation for his exercise of peremptory strikes. The *Batson* explanation does not need to be persuasive, and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral. . . . Once the State offers a race-neutral explanation for the strike, it has fulfilled its burden of production. . . . . Neither *Batson* nor its progeny require the State to produce anything further.

Finally, once the State provides its legitimate race-neutral reason, "the trial court . . . then [has] the duty to determine if the ***defendant*** has established purposeful discrimination. . . . Thus, while the State is only required to offer a ***reason*** for the strike, the defendant raising a *Batson* challenge must establish ***proof*** of discriminatory intent.

*Id.* at 129 (citations removed). *See also* La.Code Crim.P. art. 795.[3]

The State first unsuccessfully lodged initial challenges for cause against each of the prospective jurors at issue: Bertrand Alexis, John Joseph, and James Sereal. After the trial court denied those challenges, the State thereafter exercised peremptory strikes to remove them. In turn, the defendant lodged a *Batson*

---

[3] Louisiana Code of Criminal Procedure Article 795 provides, in part:

C. No peremptory challenge made by the state or the defendant shall be based solely upon the race or gender of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race or gender, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race or gender neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.

D. The court shall allow to stand each peremptory challenge exercised for a race or gender neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.

E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral or gender neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral or gender neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.

7

challenge, asserting that the removal of those prospective jurors left him with one African-American juror.

In response, the State noted that it had accepted African-American females to whom the defense had objected. It suggested that "just based on that . . . clearly there is no pattern of purposeful discrimination." Stating that it was doing so out of an abundance of caution, however, it provided a basis in the record for the exercise of its strikes. With regard to Mr. Alexis, it noted that it had challenged him for cause based upon his disagreement with the law of principals and further noted "that he had been prosecuted on a battery charge by our office, which he did not volunteer when Your Honor questioned him about that." The State addressed Mr. Joseph, stating that he "indicated that the burden of proof for him would have to be 100%." While the State reminded the trial court that its challenge for cause on that basis had been denied, it noted that it had provided "a perfectly race-neutral explanation for [the] exercise of a peremptory challenge there." Finally, and with regard to Mr. Sereal, the State pointed to the prospective juror's similar suggestion that the burden of proof was "100%" and his indication that "he in fact had been in jail himself," although he had not disclosed that fact. The State noted that Mr. Sereal further explained that he had some "scar tissue" from his prosecution of the underling offense. Each of these reasons, the State asserted, provided a race-neutral basis for the strikes.

In ruling, the trial court identified that the first question it was required to answer for the *Batson* challenge was "whether there is a pattern of systemic discrimination on the basis of race by exercising peremptory challenges." In denying the defendant's challenge, it confirmed the State's observation that it had accepted an African-American juror on the first panel, although that juror was later

8

stricken by the defendant. The trial court also noted that the State had accepted two African-American jurors from the second panel. With regard to the State's exercise of its peremptory strikes, the trial court observed that:

> I find that there is not a pattern of systematic discrimination based upon race based upon those that were accepted that are African-American jurors and those that have been challenged. And [in] that regards, even if the court were to find such, I think the race - - the reasons given by the State at the time when they made their Challenge For Cause and reiterated herein by Mr. Vines in response to making a record do provide the Court with a race-neutral reason for the challenging of Mr. Boutte, Mr. Alexis, Mr. Joseph, and Mr. Sereal. So the Court will deny the <u>Batson</u> challenge by the Defense at this time for the reasons stated.

Here, the trial court resolved the defendant's *Batson* challenge on the first element of that analysis, i.e., whether the defendant made a *prima facie* case of racial discrimination. *See Bender*, 152 So.3d 126. After review, we leave the court's ruling that the defendant failed in this regard undisturbed.

The defendant unsuccessfully lodged the objection to the peremptory challenges after the State had previously accepted other African-American jurors and after it had challenged the subject jurors for cause. While those challenges for cause were unsuccessful, the transcript supports the trial court's finding that the State's respective arguments in this regard revealed a race-neutral reason for the subject peremptory strikes, a finding that, in this context, bears on both the first and second of the *Batson* factors. Notably, one of the jurors had reservations regarding the law of principals and had belatedly disclosed a prior prosecution. The other jurors both expressed reservation regarding the requisite burden of proof and, one of them, suggested that he had "scar tissue" from a prior prosecution.

In light of these factors, we find no error in the trial court's denial of the defendant's *Batson* challenge. This assignment lacks merit.

9

## DECREE

For the foregoing reasons, the defendant's convictions and sentences are affirmed.

**AFFIRMED.**