**STATE OF LOUISIANA**  \*     **NO. 2019-KA-0777**

**VERSUS** \*

    **COURT OF APPEAL**

**DAVE A. TURNER** \*

    **FOURTH CIRCUIT**

\*

    **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 528-209, SECTION "J"
Honorable Darryl A. Derbigny, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)

LOBRANO,J., CONCURS IN THE RESULT.

Leon Cannizzaro
District Attorney
Scott G. Vincent
Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

    COUNSEL FOR STATE

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

    COUNSEL FOR DEFENDANT

                                          **AFFIRMED**
                                          **05/27/2020**

This is a criminal appeal. Defendant, Dave Turner, ("Turner"), seeks review of his convictions of attempted manslaughter and simple kidnapping. For the reasons set forth below, we affirm Turner's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

Turner was accused of kidnapping and attempting to murder T.W.,[1] his former girlfriend and the mother of his child. On February 23, 2016, Turner was charged by bill of information with attempted second-degree murder, in violation of La. R.S. 14(27)30.1, and simple kidnapping, in violation of La. R.S. 14:45. Turner appeared for his arraignment on March 2, 2016, and entered a plea of not guilty. A trial by jury commenced on June 4, 2018.

*TRIAL TESTIMONY*

The victim T.W. testified that Turner was her former boyfriend and father to her son, D.J. T.W. recounted that on February 1, 2016, Turner struck her as she was walking out the door to attend a funeral. Turner forced his hand in her mouth to stop her from screaming, and they began fighting on the side of her house. Turner, then, dragged T.W. inside the house to her bedroom.

While inside T.W.'s bedroom, Turner demanded that T.W. remove her clothes and get on the top of him as he laid on her bed. T.W. refused. Afterword,

---

[1] To protect the confidentiality of the victim, her initials are used to identify her throughout this opinion. *See* La. R.S. 46:1844(W).

Turner jumped up from the bed and ordered her to perform oral sex on him. T.W. refused again. Turner then proceeded to choke T.W. until she blacked out and became unconscious. When T.W. woke up, she discovered that Turner was raping her. T.W. tried to defend herself so that Turner would stop, but instead he choked her again until she was unconscious.

When T.W. woke up the second time, Turner demanded that she get dressed. T.W. and Turner proceeded to Turner's vehicle, where he instructed her to sit in the passenger seat. T.W. questioned Turner where they were going and he responded that they were going to pick up D.J. At that moment, T.W. was certain Turner was driving to his house when he began driving in an opposite direction toward Interstate 10 (the "interstate"). T.W. believed that "there [was] no way . . . [she] was going to make it out alive" from Turner's house "after what [she had] just [gone] through."

As T.W. and Turner were traveling on the interstate, T.W. reached for a can of mace in her purse and sprayed it in the vehicle toward Turner in an attempt to get Turner to stop the vehicle. T.W. testified that Turner immediately reacted—he opened the passenger door and pushed her out onto the interstate, all while his vehicle maintained movement.

T.W. testified that she required staples and stitches in her scalp with frequent surgeries every three to four days while in the hospital. T.W. also required three

4

skin grafts; two muscle replacements; a plate, rod, several screws permanently affixed in her ankle; and memory loss. T.W. was receiving medical treatment for her shoulder at the time of trial. Due to T.W.'s memory loss, she was incapable of recalling any further details about February 1, 2016.

Detective Christopher Baird ("Det. Baird"), a fourteen year veteran, testified that in February 2016, he was employed by the St. Charles Sheriff's Office and assigned to the Criminal Investigations Division.[2] Det. Baird stated that on February 1, 2016, he received a phone call from University Medical Center in New Orleans regarding an injured individual who stated she had been involved in a kidnapping and rape incident in St. Charles Parish. The injured individual was T.W.

While at the hospital, Det. Baird interviewed T.W. T.W. described to Det. Baird that as she was leaving her house for a funeral, Turner attacked her, and they started fighting. Turner strangled T.W. until she became unconscious and blacked out. After T.W. woke up, she discovered Turner was raping her. They started fighting again which led to Turner strangling T.W. a second time until she was unconscious. She woke up again to discover he was still raping her. Eventually, they left T.W.'s house in Turner's black Ford Expedition, and Turner proceeded to drive toward New Orleans on the interstate. Det. Baird testified that T.W. stated

---

[2] At the time of trial, Det. Baird was employed by Lafourche Parish Sheriff's Office.

that as she and Turner were traveling on the interstate, T.W. sprayed him with mace as an attempt to escape. Turner reacted and proceeded to open the passenger door of his vehicle and shoved T.W. out of the moving vehicle, "causing her to tumble down the interstate."

T.W. consented to a search of her residence. There, Det. Baird observed a broken necklace, a white jacket stained with what appeared to be mud, red-stained tissues in a trashcan located in the master bathroom, and an opened lotion bottle sitting on the dresser.

Det. Baird also viewed footage of a neighboring surveillance camera that captured the incident, as part of his investigation. The footage showed an African American man, driving a black Ford Expedition, pull his vehicle into T.W.'s driveway. The man was frantically pacing back and forth from his vehicle to inside the house for nearly an hour. The man was seen gripping T.W. by the arm as they both exited the house. The man then forced T.W. to enter the black Ford Expedition where they departed the residence heading toward the interstate. T.W. identified the man as Turner.

Det. Baird testified that he issued an arrest warrant for Turner and Turner was arrested at his home in New Orleans. During his interview conducted by Det. Baird, Turner denied having any sexual contact with T.W. on February 1, 2016. After Det. Baird informed Turner that he had evidence to directly contradict

Turner's statement, Turner admitted he had physical contact with T.W., but recalled he last saw her when he drove her to her mother's house in Kenner, Louisiana.

Det. Baird, next, examined Turner's hands, which showed injuries and abrasions. Turner claimed that he injured his hands from a bird attack and by snagging sharp wood on his sofa. Further examination of Turner's hands under an ultra-violent light revealed traces of reactive dye on his fingernails, palms, knuckles, and wrists. Det. Baird also inspected the interior of Turner's black Ford Expedition with an ultra-violent light and noted a substance that resembled a spray pattern, particularly on the steering wheel. Det. Baird recounted that Turner's black Ford Expedition was "extremely clean" and "freshly detailed," but still had a "strong, noticeable, pungent odor of pepper." Det. Baird concluded the spray pattern and substance on the steering wheel of the vehicle was attributable to mace, despite that Turner denied he was sprayed with mace.

Paul Berry testified that he is a forensic scientist with the Louisiana State Police Crime Lab and that he examined the sexual assault evidence collection kit of T.W. administered at University Medical Center New Orleans, which indicated three separate DNA profiles. Two DNA profiles were traceable to T.W. and Turner. The remaining DNA profile was traceable to an unknown contributor.

Dedre Johnson ("Ms. Johnson") testified that she witnessed T.W. falling from a moving vehicle. She immediately pulled her car over to render aide. When she approached T.W., she noticed that T.W. was bleeding from the head with a broken bloody foot. T.W. told Ms. Johnson that she had been kidnapped and that a man pushed her out of a vehicle. Ms. Johnson stated that T.W. identified the man as Turner.

Daryl Canon ("Mr. Canon") testified that as he was commuting on the interstate on February 1, 2016, he observed a woman falling backwards out of an SUV. Mr. Canon notified law enforcement and pulled his vehicle over to render aide. He recalled remaining on scene until law enforcement arrived. Mr. Canon was unable to identify driver.

Hazel W ("Ms. Hazel"), T.W.'s mother, testified that she resided in Kenner, Louisiana five minutes from T.W.'s residence. Considering that Ms. Hazel believed T.W. was attending a funeral on February 1, 2016, she and T.W. did not speak until after the incident occurred.

At the conclusion of trial, the jury returned a responsive guilty verdict of attempted manslaughter and guilty as charged of simple kidnapping. Turner filed a motion for new trial on September 28, 2018, which the district court denied on October 26, 2018. On November 5, 2018, the district court sentenced Turner to fifteen years at hard labor for the attempted manslaughter conviction, and five

years at hard labor for simple kidnapping, and ordered the sentences to run concurrently.

This appeal followed.

## ERRORS PATENT

Pursuant to La. C.Cr.P. art. 920, a review of the face of the record does not reveal any errors patent.[3]

## DISCUSSION

Turner assigns three errors for review by this Court: (1) the district court erred in denying Turner's challenges for cause against three prospective jurors; (2) the district court erred in denying Turner's motion for continuance; and 3) the district court erred in denying Turner's request for recross examination of T.W. We will discuss each assigned error in turn.

**ASSIGNMENT OF ERROR 1:** *CHALLENGES FOR CAUSE*

Turner maintains the district court erred in denying his challenges for cause against three prospective jurors: Ms. Smith, Mr. Marshall, and Ms. Martin.[4] Turner complains that he was convicted of attempted manslaughter and simple kidnapping after being forced to utilize three of his peremptory challenges on these

---

[3] La. C.Cr.P. art. 920(2) states that an errors patent is "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." *State v. Duckett*, 2019-0319, p. 8 (La. App. 4 Cir. 12/18/19), 288 So.3d 167,173-174.

[4] To protect the privacy of the jurors, we chose to use only their last names in this opinion. *State v. Hutsell*, 2017-0112, p. 31 (La. App. 4 Cir. 4/18/18), 241 So.3d 542, 560.

three jurors who should have been stricken for cause. Turner argues that, as a result, his convictions and sentences should be set aside.

"Louisiana Constitution article I, § 17 guarantees defendants the right to a full *voir dire* examination of prospective jurors and challenge jurors peremptorily." *State v. Juniors,* 03-2425, p. 7 (La. 6/29/05), 915 So.2d 291, 304. The intent of *voir dire* examination is to determine the qualifications of prospective jurors by testing their competence and impartiality. *State v. Thompson*, 495 So.2d 328 (La. App. 4th Cir. 1986). In a trial for an offense punishable by imprisonment at hard labor, the defendant shall have a maximum of twelve peremptory challenges. La. C.Cr.P. art. 799. The grounds for which a defendant may challenge a juror for cause, enumerated in La. C.Cr.P. art. 797, provides in relevant part, "[t]he juror is not impartial, whatever the cause of his partiality" and "[t]he juror will not accept the law as given to him by the court." *Hutsell*, 2017-0112, p. 9, 241 So.3d at 561 (quoting La. C.Cr.P. art. 797(2) and (4)). When a defendant is forced to use a peremptory challenge as a consequence of a trial court's erroneous ruling on the defendant's challenge for cause during *voir dire*, the defendant's statutory and constitutional rights are violated. *State v. Dotson*, 2016-0473, p. 4 (La. 10/18/17), 234 So.3d 34, 38. In order for a defendant to successfully show that the trial court was erroneous in its ruling, this Court in *State v. Taylor*, 97-0927, p. 2 (La. App. 4 Cir. 5/19/99), 735 So.2d 908, 910 (citing *State v. Rhodes,* 97-1993, p. 2

(La. App. 4 Cir. 11/18/98), 722 So.2d 1078), articulated that "[i]n a case where a defendant has exhausted his peremptory challenges, a defendant must show that the trial court abused its discretion by denying a challenge for cause; no additional showing of prejudice is required."

In the case *sub judice*, there is no dispute that Turner used peremptory challenges on Ms. Smith, Mr. Marshall, and Ms. Martin, depriving him of the right to use those peremptory challenges on other prospective jurors. Accordingly, we need only to determine whether Turner has shown the district court abused its discretion in denying his challenges for cause. *State v. Maxie*, 93-2158, p. 16 (La. 4/10/95), 653 So.2d 526, 534.

This Court in *State v. Ravy*, 2019-0144, p. 13 (La. App. 4 Cir. 9/11/19), 282 So.3d 289, 298, set forth that the trial court is charged with broad discretion in ruling on challenges for cause, which its rulings are generally upheld in the absence of a clear abuse of discretion. The trial judge has the advantage to observe prospective jurors' facial expressions and vocal responses during the *voir dire* examination, whereas a reviewing court merely has access to a "cold record" during review. *State v. Lee*, 93-2810, p. 5 (La.5/23/94), 637 So.2d 102, 108. *Voir dire* transcripts are reviewed in whole when examining whether the trial court abused its discretion in denying the defendant's challenges for cause against prospective jurors. *Id.*

11

While bearing these principles in mind, we now turn to *voir dire* examination:

*Ms. Smith*

Turner argues that Ms. Smith should have been dismissed for cause because Ms. Smith never indicated if she was capable of setting aside her sister's past sexual assault and examining the case objectively. We disagree.

Ms. Smith stated that her sister was sexually assaulted in the past. When the State questioned Ms. Smith whether her sister's sexual assault would cause her to believe one side over the other, Ms. Smith replied that she did not know. Further exchange between Ms. Smith and the State, provided in relevant part:

> [THE STATE]:
> And would you be able to look at this experience that your family has had in the past regarding this, and would you be able to say, to delineate that experience as separate from this defendant and this experience, and be able to judge the defendant fairly?
>
> MS. SMITH:
> I would like to think that I could do that.
>
> *   *   *
>
> [THE STATE]:
> Okay. And like I said before, this is a different defendant and a different case, different set of circumstances; would you be able to separate that from your private life?
>
> MS. SMITH:
> I would hope so.

The Louisiana Supreme Court, in *Dotson*, 2016-0473, pp. 17-18, 234 So.3d at 45, espoused that a prospective juror's equivocal responses does not establish grounds to be dismissed for cause. There, the prospective juror was questioned whether the fact that her mother was a rape and murder victim would hinder her ability to remain impartial. The prospective juror replied with uncertainty, "it might!" The *Dotson* Court noted that "La. C.Cr.P. art. 797(2) does not require a prospective juror to state with absolute certainty that he [or] she cannot be impartial in order to be removed for cause." *Id*. The Supreme Court did not find any abuse of discretion by the trial court and held that "[a] prospective juror's relationship to a person who was the victim of a crime likewise does not disqualify a prospective juror from serving." *Id.* at 42.

In the case *sub judice*, Turner has failed to show that the district court abused its discretion in denying his challenge for cause against Ms. Smith. When the State questioned Ms. Smith if she was capable of remaining fair and impartial, and separating her private life from the defendant's, she replied, "I would hope so" and "I would like to think that I could do that." Pursuant to *Dotson* and La. C.Cr.P. art. 797(2), Ms. Smith's omission to state with absolute certainty is not an automatic ground for disqualification as a juror. Moreover, Ms. Smith's relationship in itself to her sister does not establish the requisite grounds to have her dismissed for cause. *See Id.* at 45 (wherein the Supreme Court found that the

witness's relationship in itself to a rape victim had no bearing on the witness's ability to remain impartial).

Accordingly, we find that Turner has not shown that the district court abused its discretion in denying his challenge for cause against Ms. Smith.

*Mr. Marshall*

Turner complains that Mr. Marshall's statements warranted a dismissal for cause, pointing out that Mr. Marshall was not rehabilitated but rather confused. We disagree.

Mr. Marshall replied that he would like to hear both sides of the story when the State questioned all the prospective jurors whether Turner should testify. Mr. Marshall also stated he understood that Turner did not have to testify. He further stated that he understood it was Turner's right not to testify, and if Turner chose not to testify, it could not be held against him.

Based on Mr. Marshall's inconsistent statements, Turner lodged his challenge for cause. Mr. Marshall was thereafter questioned in the judge's chambers.[5] The judge explained to Mr. Marshall that a criminal defendant is not required to testify on his own behalf. Mr. Marshall replied that he understood. The judge then asked Mr. Marshall, "[s]o the question ultimately is this: if, indeed Turner elects not to testify, is that something you would be able to put out of your

---

[5] The record is replete with *voir dire* examination transcripts that took place in the judge's chambers.

mind in terms of how to decide the case…" Mr. Marshall subsequently replied that he wanted to see facts from both sides, indicating that he expected one side to prove Turner's culpability and the other side to prove Turner's innocence.

Further exchange shows that the State proceeded to rehabilitate Mr. Marshall, which provided in relevant part:

> And if I were to tell you that the Defense doesn't have a burden, at all; the entire burden rests with the State. It's our burden, 100 percent our burden to prove to you, beyond a reasonable doubt, that this defendant committed these crimes that we are accusing him of. And the Defense can sit there and not say anything at all. They do not have to get up, not even once, not for any of the witnesses, not for anything, and he doesn't have to take the stand. And you judge that paper [sic] based upon whether or not you believe that we've done our job to prove to you beyond a reasonable doubt that he is guilty or not guilty. So, would you hold that against the Defense if they didn't present a case?

Mr. Marshall replied that he understood. The district judge explained, once again, that the State bears the entire burden of proof. The district court judge also stated that if the State failed at convincing Mr. Marshall beyond a reasonable doubt that Turner is guilty of his charges, Turner should be acquitted. Mr. Marshall replied that he understood. When asked if he would hold it against the defense in the event the defense chose not to present a case, Mr. Marshall replied, "[n]ot at all."

In *State v. Cleveland*, 2012-0163, pp. 10-13 (La. App. 4 Cir. 2013), 115 So.3d 578, 585-87, the defendant argued that it was prejudicial when he was forced to use five of his peremptory challenges on jurors that should have been dismissed for cause. In that case, one of the prospective jurors was confused regarding who

bore the burden of proof in a criminal trial. The defense, noting the single prospective juror's confusion, explained to the entire jury venire the scope of the state's burden, including that the defendant may elect not to testify at his sole discretion. All of the prospective jurors responded in concert that they understood. This Court concluded that the sole prospective juror was rehabilitated after all prospective jurors' responded in the affirmative to the defense question. Thus, this Court found the trial court did not err in its denial of the defendant's challenge for cause.

In *State v. Wiley*, 2016-0999, p. 27 (La. App. 4 Cir. 11/15/17), 231 So.3d 774, 792 (quoting *State v. Washington*, 2015-0819, pp. 4-5 (La. App. 4 Cir. 2/17/16), 187 So.3d 71, 74), this Court reasoned that "a prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause . . . if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially[.]" The prospective juror was rehabilitated regarding her potential inability in maintaining her impartiality. This Court held that the trial court did not abuse its discretion in denying the defendant's challenge for cause. *Id.*

Similarly, in the case *sub judice*, we conclude that the district court did not abuse its discretion in denying Turner's challenge for cause against Mr. Marshall. Mr. Marshall's *voir dire* examination compares to the prospective juror in

*Cleveland* and prospective juror nineteen in *Wiley*, in that Marshall was rehabilitated by the defense to resolve his confusion. The record also reflects that Marshall was further rehabilitated by the State and twice by the court, where he ultimately replied that he understood Turner had a right in choosing whether to testify.

Accordingly, we find that Turner has not shown that the district court abused its discretion in denying his challenge for cause against Mr. Marshall.

*Ms. Martin*

Turner argues that the district court failed to dismiss Ms. Martin for cause when Ms. Martin did not state with certainty that she was capable of maintaining her impartiality in the event Turner elected to not testify.

Similar to Mr. Marshall, during *voir dire*, Ms. Martin, stated that she would probably have a hidden bias in the event Turner did not testify but also that she understood it was the defendant's constitutional right. Ms. Martin was summoned to the judge's chambers after the defense lodged a challenge for cause because of her contradictory statements. While in the chambers, the judge questioned Ms. Martin if she could analyze the case on its own merits, to the exclusion of Turner's election to testify or not. Ms. Martin responded that she is unfamiliar with the courts and questioned why a defendant would not want to testify that he is

innocent. She, however, stated that she could "shush that part of her questioning" and put those questions aside.

The defense and the district judge in an effort to resolve Ms. Martin's confusion, stated, in pertinent part:

THE COURT:
    Let me put it another way. The state's concluded its case. The defendant hasn't taken the witness stand. If you believe the State has carried its burden of proof, beyond a reasonable doubt, every element of the offense, but the defendant has not testified, would you be able, if you're convinced of the state's case, to find him guilty, even though he's not testified?

MS. MARTIN:
    Yes, yeah.

\* \* \*

 [THE DEFENSE]:
    And you're saying, well, I believe some of what they are saying, but I don't know if I believe everything, but I believe some; do you see what I'm saying? At that point, at any point will it come to say, if he doesn't testify, you will say, well, why hasn't he testified? If he were to say ABC, that probably would make me say, okay, I can come this way, but without him testifying, would you hold that against him, that's all I'm asking.

MS. MARTIN:
    No, I don't think I would.

After reviewing Ms. Martin's *voir dire* questions and answers as a whole, and for the reasons espoused by this Court in *Wiley*, 2016-0999, p. 27, 231 So.3d at 792, we conclude that the district court did not abuse its discretion in denying Turner's challenge for cause against Ms. Martin.

Accordingly, Turner has not shown that the district court abused its discretion in denying his challenges for cause against Ms. Smith, Mr. Marshall, and Ms. Martin.

This assignment of error lacks merit.

**ASSIGNMENT OF ERROR 2: *MOTION FOR CONTINUANCE***

Turner argues the district court erred in denying his motion for continuance.

After the State rested its case, the defense requested a continuance until the following morning. Outside the purview of the jury, defense counsel argued a short continuance would allow the jury to return to court "fresh" and grant Turner the opportunity to decide whether he would testify on his own behalf. The district court denied defense counsel's request. Turner asserts it was prejudicial for the State and its witnesses to "come back and be fresh" the next day at trial while he was not permitted the same opportunity. Had Turner decided to testify at 8:00 P.M., he alleges that "the proceedings would have lasted until one or two o'clock in the morning," and the jury would have been fatigued. Turner, therefore, complains that his Sixth Amendment right to present a fair trial was violated, warranting reversal of his convictions and sentences. We disagree.

This Court has previously held in *State v. Brown,* 12-0626, pp. 16-17 (La. App. 4 Cir. 4/10/13), 115 So.3d 564, 575, that the trial court is vested with considerable discretion in ruling on a motion for continuance, and the reviewing

19

court will not disturb the trial court's ruling absent a clear abuse of that discretion. "Whether a refusal to grant a continuance was justified depends primarily on the circumstances of the particular case." *State v. Winston*, 327 So.2d 380, 382 (La.1976). Therefore, the defendant must show that the trial court abused its discretion and specific prejudice was a direct consequence resulting from the trial court's denial of the defendant's motion for continuance. *State v. Dangerfield,* 2000-2359, p. 7 (La. App. 4 Cir. 4/3/02), 816 So.2d 885, 893.[6]

In *State v. Wright*, 445 So.2d 1198, 1203 (La.1984), the Louisiana Supreme Court found that there was nothing unusual in retiring a jury late in the evening rather than retiring the jury early and continue trial proceedings the following day. There, the defendant argued that he was deprived a fair trial because the long hours of testimony during the two-day trial resulted in jury retirement at 11:00 P.M. The verdict was not returned until 3:00 A.M the following morning. *Id.*

In the case *sub judice*, Turner fails to show that the district court abused its discretion in denying his motion for a continuance. There was nothing unusual in

---

[6] La. C.Cr.P. art. 708 provides that "[a] continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced." A motion for a recess is evaluated by the same standards as a motion for a continuance. *State v. Plaisance*, 2000-1858, p. 29 (La. App. 4 Cir. 3/6/02), 811 So.2d 1172, 1193 (citing *State v. Hodges,* 98-0513 (La. App. 4 Cir. 11/17/99), 749 So.2d 732, 739. In the case *sub judice*, the record reflects that defense counsel lodged a motion for continuance rather than a motion for recess. Notwithstanding whether the district court construed Turner's motion as a motion for recess or motion for continuance, the same standard is employed during review.

the district judge permitting the proceedings to continue into the early hours of the morning—if Turner opted to take the stand to testify on his behalf—rather than granting Turner the opportunity to present his case the following day. Moreover, the record reflects that the district judge explained in advance to the State, Turner, and the jury the possibility of trial continuing late into the evening.

This assignment of error lacks merit.

**ASSIGNMENT OF ERROR 3:** *RECROSS EXAMINATION*

Turner maintains the district court erred in refusing to grant him the opportunity to recross examine T.W. Turner avers that T.W. was capable of being impeached, provided that the defense was granted the opportunity to recross T.W. on newly discovered information regarding her plans to attend Mr. Harold, the owner of Mullet's, funeral on the day the incident occurred. Turner complains that T.W.'s cross-examination testimony contradicted her prior statements given to law enforcement regarding this issue.[7] Turner therefore contends he is entitled to a new trial because his Sixth Amendment right to confront his accuser on newly discovered information was violated. We disagree.

"The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the

---

[7] Turner specifically points out that the actual proprietor of Mullet's, Henry Shiloh, allegedly passed away in 2013, and that T.W. could not have been attending a funeral for Mr. Harold who was the proprietor of Mullet's in 2016.

right to confront the witnesses against him." *State v. Warner*, 2012-0085, pp. 13-14 (La. App. 4 Cir. 5/1/13), 116 So.3d 811, 818, (citing *State v. Jackson*, 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 852).

When reviewing a district court's refusal to grant a defendant's request to recross examine a witness against him, this Court in *State v. Plaisance*, 2000-1858 (La. App. 4 Cir. 3/6/02), 811 So. 2d 1172, 1199, espoused:

> Permitting of recross examination is within the sound discretion of the trial judge, and in the absence of an abuse of that discretion and resulting prejudice, the ruling will not be disturbed on appeal. *See State v. Hidalgo,* 95-319 (La. App. 4 Cir. 1/17/96), 668 So.2d 1188, 1194; *State v. Brooks,* 94-1031 (La. App. 5 Cir. 5/30/95), 656 So.2d 772, 775. [footnote omitted] However, La. C.E. art. 611 states that "[w]hen the court has allowed a party to bring out new matter on redirect, the other parties *shall* be provided an opportunity to recross on such matters." (Emphasis added).

La. C.E. art. 611(D) provides the scope for confronting witnesses during recross examination, in relevant part as:

> A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.

In *State v. Batiste*, 318 So.2d 27, 35 (La.1975), the Louisiana Supreme Court held that there was no abuse of discretion vested in the trial court's finding that the defense counsel's questions presented on recross examination were not new matters covered during the state's redirect examination. There, the defense counsel

cross-examined the witness regarding the witness's identification. The state proceeded with its redirect examination and asked limited questions regarding the witness's identification, indicating that there were no new matters. *Id*. During recross examination, the state lodged its challenge for cause after defense counsel attempted to ask the witness questions pertaining to the friendship between the defendant and victim. *Id*. The Supreme Court reasoned that the questions pertaining to the victim and defendant's relationship were not covered on redirect examination and went beyond the scope of recross examination.

In the case *sub judice*, we find that the district court did not abuse its discretion in refusing to grant Turner the opportunity to recross examine T.W. A review of the record reveals that the State's redirect examination did not introduce any new matters relating to whose funeral T.W. planned to attend on the day the incident occurred. Permitting Turner the opportunity to further explore on the matters covered during *his* cross-examination of T.W. would exceed the scope of recross examination enumerated in La. C.E. art. 611(D). Although defense counsel argues they were unable to explore these matters in connection with T.W.'s credibility, we highlight that T.W.'s testimony was corroborated by Det. Baird, Mr. Canon, Ms. Johnson, and the physical evidence, indicating that the district court did not abuse its discretion.

In conclusion, Turner fails to show what prejudice, if any, he suffered as a consequence of the district court refusing to grant his request to recross examine T.W. It follows then, Turner's Sixth Amendment Confrontation Rights were not violated and, consequently, he is not entitled to a new trial.[8]

This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, Turner's convictions and sentences are affirmed.

**CONVICTION AND SENTENCE AFFIRMED**

---

[8] We also note that a review of the record revealed that Turner could have elected to recall T.W. as a testifying witness to explore the matters he alleges is newly discovered information, but he failed to do so. *See State v. Seals*, 09-1089, p. 46 (La. App. 5 Cir. 12/29/11), 83 So.3d 285 (wherein the Fifth Circuit pointed out that the defendant could have recalled the witness as his own to explore new matters introduced during the defendant's cross-examination).